Vincent E. McGeary
Michael Cukor
Elvin Esteves
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5497
(973) 596-4500

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AVOCENT REDMOND CORP., <br><br> Plaintiff, <br> vs. <br><br> RARITAN INC. and RARITAN AMERICAS, INC., <br><br> Defendants. | Case No. 10-Cv-6100 (PKC) <br><br> *Document Filed Electronically* <br><br> **DEFENDANTS' ANSWER AND DEFENSES** |

## DEFENDANTS' ANSWER AND DEFENSES

Defendants Raritan Inc. and Raritan Americas, Inc. ("Raritan Americas ") (collectively, "Raritan" or "Defendants"), by and through its counsel Gibbons PC, answers Plaintiff's Complaint (the "Complaint") herein and as follows:

1.      Paragraph 1 of the Complaint alleges incomplete characterizations of Civil Action No. 01 Civ. 443. Defendants deny that the alleged characterizations completely and accurately describe the factual and legal record.

2.      Paragraph 2 of the Complaint alleges incomplete characterizations of Civil Action No. 01 Civ. 443. Defendants deny that the alleged characterizations completely and accurately describe the factual and legal record.

3.      Paragraph 3 of the Complaint alleges incomplete characterizations of Civil Action No. 01 Civ. 443. Defendants deny that the alleged characterizations completely and accurately describe the factual and legal record.

4.      Paragraph 4 of the Complaint alleges incomplete characterizations of Civil Action No. 01 Civ. 443. Defendants deny that the alleged characterizations completely and accurately describe the factual and legal record. Defendants admit that on or about May 12, 2005 a Settlement Agreement was entered into by and among Avocent Redmond Corp., Avocent Corp., Raritan Computer Inc. and Raritan Inc., and that the Settlement Agreement as extended by the parties had a termination date of August 13, 2010. Defendants admit that a copy of the originally executed Settlement Agreement is attached to the Complaint as Exhibit A. Defendants further admit that payments were made under the Settlement Agreement. The further allegations of paragraph 4 set forth an incomplete characterization of the terms of the Settlement Agreement, which Defendants deny.

5.      Defendants deny the allegations of paragraph 5, except to admit that the Settlement Agreement terminated on or about August 13, 2010.

## **THE PARTIES**

6.      Admitted.

7.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations paragraph 7.

8.      Raritan Americas admits that it is a corporation organized under the laws of the State of New Jersey and that it maintains a principal place of business in Somerset, New Jersey and admits that it is a citizen of New Jersey.

9.      Raritan Inc. admits that it is a corporation organized under the laws of the State of Delaware and that it maintains a principal place of business in Somerset, New Jersey.

10.     Defendants admit that Raritan Americas is in the business of marketing certain KVM switch products in the United States. As to Raritan Inc., Defendants deny the allegations of paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.     Defendants admit that, among other allegations, the Complaint purports to allege patent infringement against the Defendants. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of paragraph 11.

12.     Denied.

13.     As to Raritan Americas, Defendants admit the allegations of paragraph 13 of the Complaint. Defendants deny the allegation as to Raritan, Inc.

14.     Defendants admit that the Complaint alleges infringement against products concerning which Raritan Americas transacts business in this Judicial District. Defendants deny the allegations as to Raritan, Inc.

15.     Defendants deny committing acts of infringement within the State of New York or within this District and that Defendants reside in this District for purposes of venue. Defendants admit that Raritan Americas is subject to personal jurisdiction in this District but deny the allegations as to Raritan, Inc.

16.     Paragraph 16 of the Complaint purports to characterize Civil Action No. 01-CV4435, which characterizations Defendants deny. Defendants further deny that it has admitted jurisdiction or venue with respect to the claims in this action.

17.     Defendants deny the allegations purporting to characterize the terms of the Settlement Agreement, and deny that the Settlement Agreement confers jurisdiction and venue upon this Court in this action.

## PROCEDURAL HISTORY

18.     Defendants admit that the asserted patents in this case purport to claim priority to US Patent No. 5,721,842 (the '842 patent). Defendants admit the '842 patent was filed on August 25, 1995 and issued on February 24, 1998, but deny that the '842 patent was lawfully issued.

19.     Defendants admit that on or about February 25, 1998, Apex, Inc. ("Apex") commenced an infringement action against Cybex Computer Products, Inc. ("Cybex") alleging infringement of the '842 patent ("Cybex Litigation"). Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19.

20.     Defendants admit that US Patent No. 5,732,212 ("'212 patent) was, and is, the subject of a United State Patent Office reissue proceeding, and that a request for interference with the '842 patent was filed. Defendants further admit that Apex stipulated in the Cybex Litigation that it expected the interference to be granted, thereby admitting, among other things, that the '212 patent specification supported interfering claims. Defendants further state that the allegations of paragraph 20 of the Complaint are incomplete as to the '212 patent reissue proceedings. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 20.

21.     Defendants admit that they became aware of the Cybex Litigation at some time, but lack knowledge or information sufficient to form a belief as to when they became aware of the Cybex Litigation.

22.     Defendants admit that on or about February 25, 1998, Apex commenced an infringement action against Rose Electronics ("Rose") alleging infringement of the '842 patent ("the First Rose Litigation"). Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23.

24.     Defendants admit that they became aware of the First Rose Litigation at some time, but lack knowledge or information sufficient to form a belief as to when they became aware of the First Rose Litigation.

25.     Defendants admit that U.S. Patent No. 5,884,096 (the "'096 patent "), US Patent No. 5,937,176 (the "'176 patent") and U.S. Patent No. 6,112,264 (the "'264 patent") issued from applications claiming priority to the '842 patent.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 25.

26.     Defendants admit the '096 patent issued on or about March 16, 1999, but deny that the '096 patent was lawfully issued. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 26 of the Complaint.

27.     Defendants admit the '176 patent issued on or about August 10, 1999, but deny that the '176 patent was lawfully issued. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 27 of the Complaint.

28.     Defendants admit the '264 patent issued on or about August 29, 2000, but deny that the '264 patent was lawfully issued. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 28 of the Complaint.

29.     Defendants admit that the '096 patent, '264 patent and '176 patent were asserted in Civil Action No. 01-CV-4435.  Defendants deny that the allegations contained in paragraph 29 of the Complaint state a full and accurate characterization of the litigation, and state that the record of the litigation speaks for itself.

30.     Defendants admit that Civil Action No. 01-CV-4435 was assigned to the Honorable Judge Barbara Jones and then reassigned to the Honorable Judge Milton Pollack. Defendants further admit that from January 14-23, 2002, Judge Pollack conducted a bench trial in the matter and then granted summary judgment of non-infringement as to the '096, '264 and '176 patents.  Defendants deny that the allegations contained in paragraph 30 of the Complaint state a full and accurate characterization of the litigation, and state that the record of the litigation speaks for itself.

31.     Defendants admit that the Court of Appeals for the Federal Circuit issued a decision in Apex Inc. v. Raritan Computer Inc., 325 F.3d 1364 (Fed. Cir. 2003).  Defendants further state that the characterizations contained in paragraph 31 of the Complaint are incomplete and are therefore denied to the extent that such characterizations purport to be a full and complete history of the appeal.

32.     Paragraph 32 of the Complaint characterizes the record of Civil Action No. 01-CV-4435.  Defendants admit that the action was assigned to the Honorable Judge Castel. Defendants further state that the allegations contained in paragraph 32 of the Complaint fail to completely set forth the history of the action and Defendants therefore deny such characterizations.

33.     Defendants admit that Judge Castel conducted a hearing regarding claim construction in the action and, that on or around March 11, 2005, the Court issued a claim construction order.  The remaining allegations of paragraph 33 are denied.

34.     Defendants deny that the Master Console, Paragon, Dominion KX, and/or Dominion KSX products infringe any valid claims of the '096, '264 and '176 patents.  To the extent the remaining allegations paragraph 34 purport to allege infringement, Defendants deny the allegations.

35.     Defendants admit that Avocent Redmond Corp., Avocent Corp., Raritan Computer Inc. and Raritan Inc. entered into a Settlement Agreement, which terms speak for themselves.  To the extent that the allegations of paragraph 35 of the Complaint set forth any characterizations of the Settlement Agreement, the allegations are denied.

36.     Defendants admit that a product called a Dominion KX was on sale on or about March 2004.  Defendants deny that Raritan Inc. placed the Dominion KX on sale on or about that time.

37.     Defendants deny that Dominion KX infringes any valid claim of the '096 or '264 patents.  To the extent that any of the remaining allegations of paragraph 37 allege infringement of any claims of any patents, Defendants deny that such product infringes any valid and enforceable claim.

38.     Defendants admit that a Settlement Agreement was entered into and that royalty payments were made with respect to Dominion KX products.  Defendants further admit that certain Dominion KX products were marked with the '096 and '264 patents.  To the extent the allegations of paragraph 38 purport to characterize the Settlement Agreement, such characterizations are denied.

39.     Defendants state that a product known as the Dominion KSX was on sale on or about August 2003.  Defendants deny that Raritan Inc. placed the Dominion KSX on sale on or about that time.

40.     Defendants deny that the Dominion KSX infringes any valid and enforceable claim of the '096 and '264 Patents.  To the extent that any allegations contained in paragraph 40 of the Complaint allege such infringement, Defendants deny same.

41.     Defendants state that the Settlement Agreement speaks for itself and deny the remaining allegations of paragraph 41 of the Complaint.

42.     Defendants admit that Avocent commissioned an auditor to conduct an audit of payments made under the Settlement Agreement.  Defendants are without knowledge or information sufficient to form a belief as to whether the auditors were advised that no Dominion KSX products were included in the royalty product base report, but admit that certain Dominion KSX products were not included in the royalty base.  The remaining allegations of paragraph 42 of the Complaint are denied.

43.     Defendants admit that for some period of the Settlement Agreement certain Dominion KSX and certain components were not included in the royalty base reports, and deny the remaining allegations in paragraph 43 of the Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Complaint.

45.     As to Defendant Raritan Inc., the allegations of paragraph 45 are denied.  As to Raritan Americas, Defendants state that it introduced the Dominion KX II during the term of the Settlement Agreement and that it sold the product known as Dominion KXI, formerly known as the Dominion KX.

46.     Defendants admit the allegations of paragraph 46 of the Complaint.

47.     Defendants admit that on or about July 19, 2007 Avocent was advised through its counsel that the Dominion KX II did not utilize Licensed Technology and that revenues from the Dominion KX II were not included in royalty calculations.  The remaining allegations of paragraph 47 are denied as stated.

48.     Defendants deny the allegations of paragraph 48 of the Complaint.  Defendants further state that on or around September 6, 2007, Avocent in an email correspondence inquired as to the decision to exclude the KX II from royalty calculations.  Defendants deny that Avocent advised that "Raritan should expect damages would be accruing during the term of the five year standstill of the Settlement Agreement" or that Avocent advised of any bases for concluding that the KX II required payments under the Settlement Agreement despite an invitation to do so.

49.     Defendants deny the allegations of paragraph 49 of the Complaint.

50.     Defendants state that the Settlement Agreement speaks for itself and deny the remaining allegations of paragraph 43 of the Complaint.

51.     Defendants admit that for some of the duration of the Settlement Agreement, Dominion KX II products and other components were excluded from royalty payments under the Settlement Agreement, but deny that such products constituted Licensed Products or that any royalty was due under the Settlement Agreement for such excluded products.

52.     Defendants deny the allegations of paragraph 52 of the Complaint.

53.     The allegations of paragraph 53 of the Complaint allege characterizations of the Dominion KX II switch that are incomplete and inaccurate.  To the extent that paragraph 53 alleges that Dominion KX II switch was a Licensed Product under the Settlement Agreement, that any royalty was due and owing  for the Dominion KX II switch, or that the Dominion KX II switch infringes any claim of the '096, '176 or '264 patents, Defendants deny the allegations.

54.     The allegations of paragraph 54 of the Complaint allege operations of the Dominion KX II that are incomplete and inaccurate, and Defendants therefore deny the allegations. To the extent that the allegations allege that the Dominion KX II utilizes Licensed Technology or is a License Product under the Settlement Agreement, that any royalty was due and owing  for the Dominion KX II switch, or that the Dominion KX II switch infringes any claim of the '096, '176 or '264 patents, the allegations are denied.

55.     The allegations of paragraph 55 of the Complaint allege operations of the Dominion KX II that are incomplete and inaccurate, and Defendants therefore deny the allegations. To the extent that the allegations allege that the Dominion KX II utilizes Licensed Technology or is a License Product under the Settlement Agreement, that any royalty was due and owing  for the Dominion KX II switch, or that the Dominion KX II switch infringes any claim of the '096, '176 or '264 patents, the allegations are denied.

56.     The allegations of paragraph 56 of the Complaint are vague and ambiguous.  To the extent paragraph 56 of the Complaint alleges that the Dominion KX II utilizes Licensed Technology or is a License Product as defined under the Settlement Agreement, that any royalty was due and owing for the Dominion KX II switch, or that the Dominion KX II switch infringes any claim of the '096, '176 or '264 patents,  Defendants deny the allegations.

57.     Defendants deny that it has advised Avocent that its sole basis for contending that the Dominion KX II avoids the Licensed Patents is based upon the use of a "browser." Defendants deny the further allegations in paragraph 57 of the Complaint, except to state that Avocent, in or around July 2010, first communicated to Raritan that Avocent contended that the Dominion KX II would infringe one or more claims of the Licensed Patents.

58.     Defendants deny the allegations of paragraph 58 of the Complaint.

59. The allegations of paragraph 59 of the Complaint allege operations of the Dominion KX II which are incomplete; and, therefore, Defendants deny the allegations as stated. To the extent paragraph 59 of the Complaint alleges that the Dominion KX II utilizes Licensed Technology or is defined as License Product under the Settlement Agreement, that any royalty was due and owing for the Dominion KX II switch, or that the Dominion KX II switch infringes any claim of the '096, '176 or '264 patents, Defendants deny the allegations.

60. The allegations of paragraph 60 of the Complaint allege operations of the Dominion KX II which are incomplete; therefore, Defendants deny the allegations as stated.

61. Defendants admit that Avocent has been advised that the Dominion KX II does not utilize the overlay/overlaid limitations of the claims of the Licensed Patents and further state that Avocent should know that such limitations are not utilized. Defendants deny that Avocent has contended at all times relevant to this action that the Dominion KX II meets the overlaid/overlay limitations of certain claims of the licensed patents. In particular, Avocent was silent on its contentions from at least the introduction of the Dominion KX II until on or around July 2010. To the extent that the further allegations to paragraph 61 of the Complaint allege that Avocent timely or adequately advised Defendants of Avocent's bases for contending that the Dominion KX II meets the overlay or overlaid limitations of the Licensed Patents, Defendants deny the allegations.

62. Defendants deny the allegations of paragraph 62 of the Complaint.

63. Defendants deny the allegations of paragraph 63 of the Complaint.

64. As to Defendant Raritan Inc., the allegations of paragraph 64 are denied. As to Defendant Raritan Americas, Defendants admit that during the term of the Settlement Agreement, Raritan Americas marketed a product known as Dominion KSX II. The remaining

allegations of paragraph 64 state an inaccurate and incomplete characterization of the Dominion KSX II; therefore, Defendant Raritan Americas denies the allegations.

65.     Defendants admit advising Avocent that no royalties were required for the Dominion KSX II under the Settlement Agreement.

66.     Defendants admit the allegations of paragraph 66 of the Complaint.

67.     Defendants deny the allegations of paragraph 67 of the Complaint.

68.     Defendants deny the allegations of paragraph 68 of the Complaint.

69.     Defendants deny the allegations of paragraph 69 of the Complaint.

70.     Defendants admit that the Dominion KSX II products were not reported as royalty bearing product during the term of the Settlement Agreement, but deny that the Settlement Agreement required reporting the Dominion KSX II products or associated components.

71.     Defendants deny the allegations of the paragraph 71 of the Complaint.

72.     The responses to the allegations contained in paragraphs 53-63 of the Complaint are repeated here.

73.     Defendants admit the pendency of a Civil Action No. 2:06-CV-01711 in the United States District Court for the Western District of Washington.  The remaining allegations of paragraph 73 of the Complaint seek to characterize the record of that Civil Action, and Defendants are without sufficient knowledge or information to form a belief as to the truth of such allegations.

74.     Defendants admit they have knowledge of the pendency of the above referenced action, but deny the remaining allegations of paragraph 74 of the Complaint.

75.     Defendants admit that the United States Patent and Trademark Office granted certain reexaminations with respect to the '096 and '264 patents, but are without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of paragraph 75 of the Complaint.

76.     Defendants admit that certain reexaminations proceedings in the United States and Trademark Office with respect to the '096 and '264 patents have concluded, but deny that such reexamination proceedings were lawfully conducted or that claims relevant to this action were lawfully affirmed.

77.     Defendants admit knowledge of certain reexamination proceedings, but deny the allegations of the Complaint with respect to the timing and extent of the knowledge of the reexamination proceedings.  Defendants further deny that any claims relevant to this action were affirmed lawfully.

78.     Defendants admit that Avocent commenced an action against the United States Government in the Federal Court of Claims, and that a claim construction ruling issued in that action.  Defendants are without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 78 of the Complaint.

79.     Defendants deny the allegations of paragraph 79 of the Complaint.

80.     Defendants deny the allegations of paragraph 80 of the Complaint.

81.     Defendants admit that additional reexaminations have been requested with respect to '096 and '264 patents, but are without knowledge or information sufficient to form a belief as to the truth with the remaining allegations of paragraph 81 of the Complaint.

82.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82 of the Complaint.

83.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83 of the Complaint.

84.    Defendants deny the allegations of paragraph 84 of the Complaint.

85.    Defendants deny the allegations of paragraph 85 of the Complaint.

86.    Defendants deny the allegations of paragraph 86 of the Complaint.  As to Defendant Raritan Inc., Defendants further state that Raritan Inc. does not import, make, use, offer to sell or sell any products and in particular products identified as Master Console, Paragon and  Dominion.  As to Defendant Raritan Americas, Defendants deny that the manufacture, use, offer to sell or sale of Master Console, Paragon and Dominion products infringes any valid and enforceable claim of the '096, '264 and/or '176 patents.

87.    Defendants admit that certain Dominion KSX products were excluded from the royalty base for royalty payments under the Settlement Agreement, and further state that at all times Defendants acted in good faith in reporting sales of License Products to Avocent. Defendants further state that it has made its books and records available pursuant to the Settlement Agreement for Avocent's audit, that Avocent has conducted such audits and that Avocent did not contend that Raritan had improperly excluded Dominion KSX as reportable product under the Settlement Agreement.

88.    Defendants deny the allegations of paragraph 88 of the Complaint.

## AS TO COUNT TWO

89.    Defendants repeat their responses to paragraphs 1-88 above.

90.    Defendants are without knowledge or information sufficient to form belief as to the truth of the allegations of paragraph 90 of the Complaint except to state that Defendants deny the '096 patent was lawfully issued by the United States Patent and Trademark Office.

91.    Defendants deny that they infringed or contributed to the infringement of any valid and enforceable claim of the '096 patent.

92.    Defendants deny the allegations of paragraph 92 of the Complaint.

14

93.     Defendants deny the allegations of paragraph 93 of the Complaint.

## AS TO COUNT THREE

94.     Defendants repeat their responses to paragraphs 1-93 above.

95.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95 of the Complaint, except to deny that the '264 patent was lawfully issued by the United States Patent and Trademark Office.

96.     Defendants deny the allegations of paragraph 96 of the Complaint.

97.     Defendants deny the allegations of paragraph 97 of the Complaint.

98.     Defendants deny the allegations of paragraph of 98 of the Complaint.

## AS TO COUNT FOUR

99.     Defendants repeat their responses to paragraphs 1-98 above.

100.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 100 of the Complaint except to deny that the '176 patent was lawfully issued.

101.    Defendants deny the allegations of paragraph 101 of the Complaint.

102.    Defendants deny the allegations of paragraph 102 of the Complaint.

103.    Defendants deny the allegations of paragraph 103 of the Complaint.

## AS TO COUNT FIVE

104.    Defendants repeat the responses to the allegations of paragraphs 1-103 above.

105.    Defendants are without knowledge or information sufficient to form belief as to the truth of the allegations of paragraph 105 of the Complaint.

106.    The allegations of paragraph 106 of the Complaint contain incomplete and inaccurate characterizations of Defendants' obligations under the Settlement Agreement; therefore, Defendants deny the allegations.

107.    Defendants admit that royalty payments were not made for Dominion KSX switches.

108.    Defendants deny the allegations of paragraph 108 of the Complaint.

109.    Defendants deny the allegations of paragraph 109 of the Complaint.

110.    Defendants deny the allegations of paragraph 110 of the Complaint.

111.    Defendants deny that any royalties are due and owing for the Dominion KSX II switches and deny the remaining allegations of paragraph 111 of the Complaint.

112.    Defendants deny the allegations of paragraph 112 of the Complaint.

113.    Defendants deny the allegations of paragraph 113 of the Complaint.

114.    To the extent that paragraph 114 alleges that Defendants owe royalties for sales of the Dominion KX II under the Settlement Agreement, Defendants deny the allegations.

115.    Defendants admit that no royalties have been paid for the Dominion KX II and further state that no such payments are due and owing to Avocent.

116.    Defendants deny the allegations of paragraph 116 of the Complaint.

117.    Defendants deny the allegations of paragraph 117 of the Complaint.

118.    Defendants deny the allegations of paragraph 118 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches, acquiescence, waiver and/or estoppel.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for equitable relief are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by a lack of consideration.

## FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff has been damaged as a result of the alleged claims set forth in the Complaint, Plaintiff is barred from recovery for failure to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by their failure to perform conditions precedent.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks to recover interest payments and late fees under the Settlement and License Agreement, the applicable contractual provisions constitute a penalty and are therefore void or are otherwise unenforceable as against public policy.

## SEVENTH AFFIRMATIVE DEFENSE

Count Four should be dismissed for the failure to join Avocent Corp. in the action. Avocent Corp. is a required party to the action.

## EIGHTH AFFIRMATIVE DEFENSE

During all times relevant to the Settlement Agreement, Avocent violated its covenant of good faith and fair dealing by failing to address alleged understatements of royalty payments due and owing under the Agreement.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims for recovery of any royalties owed under the Settlement Agreement are barred by equitable estoppel because Defendants' relied upon Plaintiff's inaction and silence.

## TENTH AFFIRMATIVE DEFENSE

To the extent that any parts, components, connectors, pods or other products can be associated with the Dominion KX II, such materials have substantial non-infringing uses and are therefore not Licensed Technology or Licensed Products under the Settlement Agreement irrespective of the use of such products.

## ELEVENTH AFFIRMATIVE DEFENSE

Avocent admitted in submissions to the United States Patent and Trademark Office that as of 2008 Defendants had made all payments due and owing under the Settlement Agreement.

## TWELFTH AFFIRMATIVE DEFENSE

To the extent that the '096, '264 or '076 patents are held invalid, unenforceable, or not infringed, no further money is due and owing under the Settlement Agreement.

## THIRTEENTH AFFIRMATIVE DEFENSE

One or more claims of the '096, '264 and '176 patents are invalid for failure to comply with the statutory patentability requirements of 35 U.S.C. §§ 101, 102, 103 and 112.

## FOURTEENTH AFFIRMATIVE DEFENSE

The '096, '264, and '176 patents have not and are not being infringed, directly or indirectly, by either Raritan, Inc. or Raritan Americas.

## FIFTEENTH AFFIRMATIVE DEFENSE

The '096, '264, and '176 patents have been misused by Plaintiff by the commencement and maintenance of this action, in bad faith, without probable cause in knowing, or when it should have known, that it had no valid or enforceable claim of patent infringement against Defendants, and for Plaintiff's enforcement of said patents and demands for royalties and other damages with respect to products not covered by its patents.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or limited by intervening patent rights.

## SEVENTEENTH AFFIRMATIVE DEFENSE

1.      The '096, '264, and '176 patents are unenforceable due to inequitable conduct during prosecution of the applications that matured into those patents and during reexamination of those patents.

2.      Avocent Redmond Corp., ("Avocent Redmond") is a Washington State corporation with a principal place of business at 9911 Willows Road NW, Redmond, Washington 98052.

3.      Avocent Redmond is a wholly owned subsidiary of Avocent Corporation ("Avocent Corp.").

4.      Avocent Corp., is a Delaware corporation with a principal place of business at 4991 Corporate Drive NW, Huntsville, Alabama 35805-6201.  Avocent Corp. was formed in 2000 from the merger of Apex Inc. and Cybex Computer Products Corporation ("Cybex").

5.      Upon information and belief, Avocent Corp. owned or operated Avocent Huntsville Corp. ("Avocent Huntsville").  Avocent Huntsville formerly did business as Cybex .

6.      In this action, as set forth in the allegations contained below, Raritan contends that the '096, '176 and '264 patents are unenforceable on the basis of inequitable conduct.

7.      On information and belief, the application giving rise to the '096 patent, 08/996,723, was filed on November 12, 1997, and purports to have an effective filing date of August 25, 1995.  The application giving rise to the '096 patent purports to be a continuation of the application giving rise to the '842 patent, which issued on or around February 24, 1998.

8.      On information and belief, the application giving rise to the '176 patent, 08/970,168, was filed on November 12, 1997, and purports to have an effective filing date of August 25, 1995.  The application giving rise to the '176 patent purports to be a continuation of the application giving rise to the '842 patent.

9.      On information and belief, the application giving rise to the '264 patent, 09/244,947, was filed on February 4, 1999, and purports to have an effective filing date of

August 25, 1995.  The application giving rise to the '264 patent purports to be a continuation of the application giving rise to the '096 patent.

10.     On information and belief, Avocent Corp. owns, via its wholly owned subsidiary, Avocent Huntsville, at least the following United States Patents and application:  the '212 patent and 5,566,339 ("the '339 patent") (collectively, "the Perholtz patents") and patent application no. 10/032,325, which purports to be a continuation of US Application No. 09/228,747 now abandoned, a reissue of US Application No. 08/180,824 now Patent No. 5,732,212, and a continuation-in-part of  US Application No. 07/966,081 , now the '339 patent.

11.     The '212 patent issued March 24, 1998, from an application filed January 13, 1994.  The '339 patent issued October 15, 1996, from an application filed October 23, 1992.  The application giving rise to the '212 patent is a continuation-in-part of the application giving rise to the '339 patent.

12.     On information and belief, Apex and Cybex came under co-ownership by Avocent Corp. as the result of a merger agreed to on or before March 8, 2000 and completed as of July 10, 2000. Upon information and belief, at times relevant to this action, Avocent Corp. was the effective owner of the '212, '096, '264 and '176 patents.

13.     At times relevant to this action, at least the following persons owed a duty of candor relevant to the prosecution of one or more of the '842, '096, '176 and '264 patents because of their respective association with the filing and prosecution of the patent applications issuing as the '842, '096, '176 and '264 patents: the named inventors; Samuel Saracino, counsel at Apex and then with one or more of the Avocent entities;  Rodney C. Tullett of Christensen, O'Connor, Johnson & Kindness; Michael Casey and Charles Gerholz of Oblon Spivak, Scott Davidson of Davidson, Berquist, Jackson & Gowdey; and Doyle Weeks.

14.     Upon information and belief, the duty to of candor arose for Saracino, Tullet and the named inventors as of the date of the filing of the '842 patent application. The duty of candor arose for Gerholz and Casey not later than February, 1999. The duty of candor arose for Doyle Weeks not later than the date when Apex and Cybex agreed in principle to merge the respective companies. The duty of candor arose for Davidson not later than when he first provided advice to Avocent related to the prosecution of any of the applications giving rise to any of the progeny of the '842 patent.

## A. - Cybex Litigation

15.     On February 25, 1998, prior to any merger and the day after the '842 patent issued, Avocent Redmond, formerly Apex, sued Cybex for infringement of the '842 patent ("Cybex litigation") in the Western District of Washington Case No. 2:98-cv-00246-TSZ.  The Cybex litigation ended by Stipulation and Agreed Order to Dismiss Without Prejudice (Stipulated Dismissal) on February 22, 1999. Apex and Cybex executed the Stipulation on or about February 16, 1999.  The patent applications which gave rise to the '096, '176 and '264 patents were all pending during the Cybex litigation and after the Cybex litigation concluded.

16.     Neither Apex, including any of its successors, nor its agents, including Saracino, Tullett, Casey, Gerholz or those associated with the prosecution of any of these patents disclosed the Cybex litigation to the Patent and Trademark Office ("PTO") Examiner for purposes of evaluating the patentability of the claimed inventions.  Messrs. Saracino, Casey, Gerholz and Tullett along with all other individuals associated with the prosecution of the '096, '176 and '264 patents had a duty to disclose the existence of the Cybex litigation and all material information arising therein.

17.     During the Cybex litigation, Cybex via Doyle Weeks and its attorneys, including at least Scott Davidson, then of the law firm Nixon & Vanderhye, raised numerous invalidity defenses, including that various claims in the '842 patent were invalid as anticipated or obvious over various prior art references, including without limitation the Perholtz patents.

18.     For example, and without limitation, in its response to Apex interrogatory no. 4, served on Cybex in June 1998, Cybex stated in part:

> KVM switches were wide-spread and well-known in the market many years before the '842 patent filing date.  Examples of such KVM switches, which embody all of the specific structural and functional requirements of at least the broadest '842 patent claims, with the possible exception of the "on screen programming circuit," include Cybex switches in custom configurations and German Utility Patent DE93-03716.3U

19.     The German Patent was later disclosed in the prosecution of the application giving rise to the '096 patent, with a translation.  But Apex's agents, including Saracino, Tullet and Casey, did not disclose to the PTO how Cybex had applied the German Patent to the '842 patent, nor did any of them disclose to the PTO Cybex's response to interrogatory no. 4. Such disclosure was material to the pending patent applications which gave rise to the '096, 264 and '176 patents.

20.     In Cybex's response to Apex interrogatory no. 15, served on or about December 30, 1998, Cybex through its attorneys, detailed application of the '212 patent, along with other prior art, to the subject matter of the '842 patent.  Cybex's response to interrogatory no. 15 reads in part:

> U.S. Patent No. 5,713,212 to Perholtz, the Keyview User Manual, and the Keyview product are prior art to the '842 patent (collectively, the "Keyview prior art") and describe or embody a KVM switch with on-screen display switching…
>
> The Keyview prior art bars patentability of the asserted '842 patent claims under 35 U.S.C. §102 or §103.  Further, taken alone or in

combination with other prior art…the Keyview prior art bars patentability of the asserted '842 patent claims under 35 U.S.C. §103.

21.     In connection with its response to interrogatory no. 15, Cybex also presented detailed element by element analyses comparing the prior art -- including the '212 patent -- to the '842 patent, along with a narrative explanation of how the prior art is combined to meet the claims of the '842 patent.

22.     Apex and its agents, including Saracino, Tullet, Gerholz and Casey, did not disclose Cybex's response to interrogatory no. 15 to the PTO during the prosecution of the applications giving rise to the '096, '176 and '264 patents.

23.     During the Cybex litigation, Cybex also filed two motions for partial summary judgment.  In the first motion, filed in or around January, 1999, Cybex argued that claims 1 and 2 of the '842 patent were invalid as anticipated, as they recite subject matter which are publicly known, used, and disclosed more than a year before the conception of the invention set forth in claims 1 and 2.  Cybex specifically asserted:

> This case involves KVM switches and on-screen displays to control them…Fox Network Systems, Inc. ("Fox") of Rockville, Maryland disclosed the use of KVM switches with on-screen display in one of its own patents which was filed more than a year and a half before Apex filed for its patent, and more than a year before Apex ever conceived of KVM switches with on-screen display.  Every single feature described in claims 1 and 2 of the '842 patent is directly taught in Fox's patent.

24.     On information and belief, the "Fox patent" identified in Cybex's motion is the '212 patent.

25.     In a second motion for partial summary judgment of patent invalidity, filed in or around January, 1999, Cybex argued that claims 1, 2 and 8-17 of the '842 patent were obvious over various pieces or prior art, including without limitation, the '212 patent.

26.     At the time that Cybex filed its motions for partial summary judgment, the applications giving rise to the '096, 264 and '176 patents were pending.  Neither Apex, Avocent Corp. or Avocent Redmond disclosed Cybex's partial summary judgment motions, the invalidity arguments therein, or any supporting declarations to the Examiner of those patent applications. The persons having a duty to make such disclosures included at least Saracino, Tullet, Gerholz and Casey.

27.     During the Cybex litigation, Cybex also moved to amend its Answer to accuse Apex of inequitable conduct in procuring the '842 patent:

> All of the claims of the '842 patent are unenforceable and no damages are recoverable against Cybex because Apex engaged in inequitable conduct before the United States Patent Office during the prosecution of the '842 patent.  Specifically, the inventors, their assignee, and their legal representatives, knowingly misrepresented the scope of the alleged invention, claimed more than they had a right to claim by presenting claims that covered the known prior art, and failed to disclose all known relevant and material prior art to the Patent Office in direct violation of their legal duties.  The non-disclosed relevant and material prior art includes the patented KeyView product commercialized by Fox Networks; Apex's own commercial activities as evidenced by the sale of the SwitchBack and Desk Top Concentrator products, their functional compatibility, and operational attributes; at least Danny Beasley's prior work experience with on-screen displays in switching products qualifying as prior art to the application that became the '842 patent; and the commercial availability and wide spread use of off-the-shelf on-screen display technology.

On information and belief, Apex never disclosed Cybex's inequitable conduct arguments or its motion to Amend its Answer to the Examiner in the prosecution of the '096, '176 and '264 patents. At least Apex's agents, Saracino, Tullet, Gerholz and Casey had a duty to disclose the information to the PTO in the examination of any of the applications giving rise to the '096, '264 and '176 patents.

28.     Upon information and belief, the bases of Cybex's allegations that (1) "the inventors, their assignee, and their legal representatives, knowingly misrepresented the scope of the alleged invention, [and] claimed more than they had a right to claim by presenting claims that covered the known prior art;" (2) the inventors and their representatives failed to disclose Apex's own commercial activities; (3) Apex failed to disclose inventor "Beasley's prior work experience with on-screen displays in switching products qualifying as prior art to the application that became the '842 patent" and (4)  Apex failed to disclose "the commercial availability and wide spread use of off-the-shelf on-screen display technology" arose at least in part from the deposition testimony of inventor Danny Beasley taken during the Cybex litigation.

29.     Apex, Beasley and Apex's representatives, including Saracino, Tullet, Casey and Gerholz, failed to make such disclosures as Cybex alleged. The Beasley deposition itself constituted material information with respect to the applications giving rise to the '096, '264 and '176 patents. Apex and its representatives, including Beasley, Saracino, Tullet, Casey and Gerholz failed to disclose the Beasley deposition during prosecution of the '096, '176 and '264 patents.

30.     The Stipulated Dismissal ending the Cybex litigation was entered while Cybex's motions for partial summary judgment of invalidity were pending.  The Stipulation included a recognition by both Apex and Cybex that Cybex had filed a request for reissue for the '212 patent along with a request for an interference between the reissue claims and the claims of the '842 patent.  The parties stipulated that the request for interference would apply with respect to any claims that were pending or may be issued as part of any continuation of the '842 patent.  As set forth in the Stipulated Dismissal, Apex and Cybex stipulated in part:

> If an interference is declared pursuant to its request, Cybex intends
> to seek in the PTO a judgment (a) canceling the claims from the

'842 patent and (b) holding that the claims in any continuation of the '842 patent involved in the interference are unpatentable.

The Parties expect that Cybex's request to have an interference proceeding commenced in the PTO will be granted.  The Parties desire to have the issues to be raised in any interference proceeding resolved before proceeding with any further litigation (including discovery) of the issues in this lawsuit.

31.     Apex and its successors and agents, including Saracino, Tullet, Gerholz and Casey failed to disclose the statements and admissions contained in the Stipulated Dismissal to the Examiner for consideration on patentability for any of the then pending patent applications, and failed to disclose the evidentiary basis for the Stipulation. Such persons had a duty to disclose the admissions and the basis for making such stipulations.

32.     The Manual of Patent Examining Procedure ("MPEP") requires that where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising there from must be brought to the attention of the Examiner.  See MPEP 2001.06(c).  Examples of such material information include evidence of possible prior public use or sales, questions of inventorship, prior art, allegations of "fraud," inequitable conduct," and "violation of duty of disclosure." Id.

33.     The Cybex litigation was co-pending with the '096, '176 and '264 patent applications.  The subject matter of the Cybex litigation, the '842 patent, has the same disclosure as -- and therefore involves the same subject matter as -- the '096, '176 and '264 patents.

34.     Accordingly, Apex, Avocent Corp. and Avocent Redmond, had a duty to disclose the Cybex litigation and all material information arising therein to the PTO in all the pending patent applications, including without limitation the applications for the '096, '176 and '264 patents.

35. The inventors, Apex, its successors and their agents, including Saracino, Tullet, Gerholz and Casey, did not disclose to the PTO, during the prosecution of the applications giving rise to the '096, '176 and '264 patents, at least the above-described material information from the Cybex litigation. The failure to disclose this and other material information relating to the Cybex litigation constitutes a violation of each of the respective persons' duty of candor.

36. The information was material to the patentability of each of the applications giving rise to the '096, '176 and '264 patents, at least because the arguments were not cumulative to information already of record and to which the attention of the Examiner had been drawn. Apex and its agents, including Saracino, Tullet, Gerholz and Casey knew of the materiality and duty to disclose at least by virtue of the explicit guidance of the Manual of Patent Examining Procedure related to disclosing material information related to litigation, and by virtue of the allegations of non-disclosure Cybex made in the Cybex litigation and in Cybex's Attempted Protest wherein Cybex particularly pointed out that Apex had failed to disclose Cybex's motions for summary judgment of invalidity.

37. The deliberate omission of the aforementioned information, including but not limited to statements made in connection with the Cybex litigation, was done with the intent to deceive the Examiner. Without limitation, Apex, at least as evidenced in its Stipulation of Dismissal, believed and admitted that claims in the pending applications were unpatentable over information identified in the Cybex litigation, but deliberately failed to disclose the information.

## B. - Cybex's Attempted Protest

38. In addition to the specific arguments against validity and enforceability advanced in the Cybex litigation, Cybex also attempted to file a protest with the PTO in the pending '096 application. Cybex, through H. Warren Bauman of Nixon & Vanderhye, asserted that reopening

prosecution of the '096 patent application was appropriate because: (i) the '212 patent clearly

anticipates claims directed to keyboard/mouse switches with on-screen display control; and (ii) it

was the '096 patent application applicants who made earlier consideration of this information

impossible.

39.     As set forth in the Attempted Protest Under 37 C.F.R. 1.291, Cybex asserted:

> The close connection of the '212 patent [to the '096 patent
> application claims] warrants the remedy sought here.  The '212
> patent clearly anticipates the parent '842 patent claims.  *See*, for
> example, claim chart at Attachment 7 and the Declaration of
> Anderson at Attachment 5.  Attachment 7 shows a detailed claim
> chart linking the parent '842 patent claim language to the '212
> patent disclosure.  The detailed claim chart is strong evidence
> showing the applicability of the '212 patent and the basis for the
> public's interest in reopening the prosecution in [the '096 patent
> application].

***

> The materiality of the '212 patent can be amply seen in the
> Attachment 7 claim chart, as well as in the Request for Interference
> (Attachment 8), in which the '212 patent disclosure is applied to
> the proposed count in word-by-word detail.  This pending Request
> for Interference…implicates both the '842 patent and the ['096
> patent application].  As indicated above, Cybex also has filed a
> Request for Reissue of the '212 patent to include claims
> corresponding to those in the issued '842 patent.

40.     Cybex also filed a Petition to Waive the Rules in an effort to have its Protest

considered. As set forth in the Petition to Waive the Rules, Cybex asserted:

> It is important to note that, despite litigation discovery, Apex
> withheld the information needed by [Cybex] to file this Protest
> earlier.  Specifically, although Apex provided [Cybex's] trial
> counsel with knowledge of the existence of the ['096 patent
> application], it did so *only* under strict confidentiality rules
> imposed by the Trial Court's Protective Order.  It was not until
> *after* the Notice of Allowance was mailed that Apex provided
> [Cybex] with a non-confidential copy of the ['096 patent
> application] that [Cybex] could legally use to file this Protest….

> Because the '212 prior art reference is material to the subject
> matter of the '842 patent and its progeny, and is being used to
> provoke an interference with the '842 patent and the ['096 patent
> application], [Cybex] respectfully requests that the Rules be
> waived to filly consider the attached Protest.

41.     Apex through its patent attorney Charles Gerholz opposed the Petition to Waive

the Rules, referring to an Information Disclosure Statement ("IDS") and Notice of Allowability

which Apex claimed showed that the Examiner had already considered the '212 patent on

December 4, 1998.  Apex through Gerholz made this argument with knowledge that the specific

arguments raised by Cybex in at least its answers to interrogatories and in its motions for partial

summary judgment for invalidity were not disclosed to the Examiner.

42.     Cybex, in its reply memorandum asserted that the '212 patent had been included

among one hundred other references, and that no Examiner could have "considered" the '212

patent when Apex had it buried in a box of paper.  Cybex also argued that Apex failed to include

with their improperly filed IDS the required certificate under 37 C.F.R. §1.97(d-e).

43.     As set forth in Cybex's Reply to Opposition to Petition to Waive the Rules and

Protest, Cybex also raised a violation of the duty of candor on the part of Apex and its

representatives:

> …Apex never apprised the PTO of the reason for the relevance of
> the '212 patent, [yet] Apex has essentially admitted in Court that
> the '212 patent will result in the [PTO] granting an interference.
>
> ***
>
> Of course, Apex has known during the pendency of [the '096
> patent application] that the '212 patent is being used as a basis to
> show invalidity of the patent '842 patent claims.  Still, Apex never
> chose to tell the Examiner of this fact, nor to highlight to the
> Examiner that the '212 patent may be worthy of particular
> consideration.  Rather, Apex did the opposite: it buried the
> reference among a hundred others, and then never told the
> Examiner that is was the substance of a direct invalidity attack.  To
> the best of Cybex's knowledge, Apex has not yet provided the

Examiner with a copy of Cybex's Summary Judgment Motion of Invalidity of the ['842] patent or any of its supportive exhibits.

\*\*\*

Apex's [argument] that the '212 patent was already considered and that the present application should be allowed to issue, [is] inconsistent with Apex's corporate position.  Apex has agreed by stipulation that it believes that Cybex's pending Request for Interference between the '212 patent and the '842 patent "will be granted."…

[T]he Apex Opposition ratifies Apex's improper tactic of forcing the Examiner's expedited review of the one-hundred references in the subject IDS (to whitewash the present application into allowance over the '212 patent).  [Yet], Apex has admitted that the '212 patent is relevant and material enough to provoke an interference over "any continuation of the '842 patent" (i.e., [the '096 patent application]).

44.    Cybex's protest was not considered by the Examiner because it was filed after issuance of the Notice of Allowance for the application giving rise to the '096 patent. Notwithstanding that the proposed protest was included in the prosecution history of the '096 patent, Cybex's argument with respect to Apex's failure to comply with the duty of disclosure was never separately cited to the Examiner during the prosecutions of the '096, '176 and '264 patent applications.

45.    On information and belief, the arguments made in connection with Cybex's Attempted Protest and Petition to Waive the Rules were deliberately omitted and not disclosed to the PTO during the prosecutions of the '096, '176 and '264 patents.

46.    The information in the Cybex Protest Request is material to the patentability of each of the '096, '176 and '264 patents, because a reasonable Examiner would have considered this information important in deciding whether to allow each of the patents.

47.    Further, such information is material to the patentability of each of the '096, '176 and '264 patents, because it was not cumulative to information already of record and to which

the attention of the Examiner had been drawn, and it established a prima facie case of unpatentability of each of the '096, '176 and '264 patents, either alone or in combination with other prior art. It was further material because a reasonable Examiner would have considered the information important to determining patentability.

48.     The deliberate failure of Tullet, Gerholz, Saracino and Casey to draw the attention of the Examiner to the arguments by Cybex was done with the intent to deceive the Examiner. Further, despite being alerted to its duty to disclose Cybex's Motions for Partial Summary Judgment of Invalidity, Apex's agents, including at least Saracino, Tullet, Gerholz and Casey failed to disclose such motions or the arguments therein with the intent of foreclosing the Examiner from considering the invalidity arguments therein.

### C. - Perholtz Patents and Prosecution

49.     Apex did not provide the '212 patent as prior art to the PTO until November 25, 1998, when Apex through its patent attorney, Rodney C. Tullett, filed, after receiving a Notice of Allowance, an IDS in the application giving rise to the '096 patent, listing without comment the '212 patent among one hundred (100) prior art references.  At the time Apex caused its attorney to disclose the '212 patent without comment and among one hundred prior art references, at least its agent Sam Saracino knew of the particular relevance of the prior art through his participation in the Cybex litigation. Submitting the '212 patent after having received a Notice of Allowance, without disclosing any of the litigation information material to the '212 patent, and among 100 references was done with intent to deceive the Examiner.

50.     Apex filed the IDS after the Notice of Allowance issued for the '096 patent application.  The Perholtz patents, including the '212 patent, were not separately cited during the prosecution of  the '176 patent. At least Saracino, Gerholz and Tullet were aware of the

arguments made during the Cybex Attempted Protest and Petition to Waive Rules concerning Apex's failure to separately present the '212 patent and failure to disclose the material information disclosed in the Cybex litigation related to the application of the '212 patent and other prior art to the '842 patent claims.

51.     By merely citing the '212 patent among 100 references in an IDS filed after a Notice of Allowance had been mailed, and without attempting to distinguish the claims of the pending applications from the '212 patent, Apex and all those involved in the prosecutions of the applications giving rise to the '096, '176 and '264 patents, failed in their duty of disclosure to the PTO. Such persons included at least Saracino and Tullet.

52.     Cybex also filed a Request for Interference between the '842 patent and the reissue application for the '212 patent.  Cybex argued that the reissue application for the '212 patent interfered with the '842 patent, and presented detailed charts supporting the invalidity of certain of the '842 patent claims.

53.     On information and belief, the Perholtz patents and the arguments made in connection with the Request for Interference were deliberately omitted and not disclosed to the PTO during the prosecution of the '096, '176 and '264 patents.  In particular, Apex through its counsel Tullet and representative Saracino deliberately buried the '212 patent among numerous references after the Examiner issued a Notice of Allowance and withheld the Cybex arguments regarding the priority of the '212 patent in the Request for Interference for the purpose of diverting the Examiner's attention from the reference. Without limitation, Tullet and Saracino had a duty to disclose the Request for Interference, and Apex's stipulation in the Cybex litigation that the '212 patent likely interfered with claims of the '842 patent and that claims in the pending applications were likely unpatentable over the '212 patent.

54.     On information and belief, the '212 patent and information in the Request for Interference are material to the patentability of each of the '096, '176 and '264 patents, because a reasonable Examiner would have considered the non-cumulative information important in deciding whether to allow each of the patents.

55.     On information and belief, diverting of the attention of the Examiner from the '212 patent and from material information in the Request for Interference, Stipulation of Dismissal and other material related to the application of the '212 patent to the claims pending in pending applications that gave rise to the '096, '176 and '264 patents was done with the intent to deceive the Examiner and the PTO.

### D. - Undisclosed Co-ownership

56.     On information and belief, in the reissue application for the '212 patent, in remarks filed on August 22, 2000, Cybex brought to the Examiner's attention that the potential parties to the requested interference, Apex and Cybex, had merged, each becoming commonly owned by a parent company, Avocent Corp.  Cybex specifically stated, "Avocent is now the effective common owner of both the present application and the Beasley patents at issue."

57.     Avocent Corp. and Avocent Redmond or its successor or agents, including Samuel Saracino and Doyle Weeks, failed to disclose the copendency of the '212 patent reissue application with the '264 patent application at a time when the properties were effectively owned by the same entity.  A reasonable Examiner would have considered this information important to the patentability of the claims in the application which gave rise to the '264 patent.  Avocent Redmond or its agents, Saracino, and Weeks, knew of the duty to disclose such co-ownership, as such was disclosed in the prosecution of the '212 patent reissue application.  The failure to

disclose the co-ownership of the Perholtz and '096, '176 and '264 patent properties was done with intent to deceive the Examiner.

**E. – '096 Reexamination**

58.     Pursuant to 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of the '096 patent application and the reexamination of the '096 patent had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

59.     The inventors, Danny L. Beasley, Robert V. Seifert, Paul Lacrampe, James Huffington, Thomas Green, Kevin Hafer, and Rodney Tullett, were all associated with the filing and prosecution of the '096 patent application and therefore had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

60.     Michael R. Casey ("Casey") was associated with the reexamination of the '096 patent and therefore had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

61.     Upon information and belief prior to the filing date of the '842 patent, the assignee of the '096 patent sold products which embodied a more complete combination of the relevant features of the '096 patent than other prior art that was available to the Examiner during the prosecution of the '096 patent. These products included the Apex SwitchBack, the Apex Desktop Concentrator, and the Apex 8001/KVM (hereinafter "the Avocent Products"). The Avocent Products are prior art to the '096 patent.

62.     Upon information and belief the relevant features of the Avocent Products were described in documents known to and available to the individuals who owed a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56. These documents included at least circuit level schematics for the Avocent Products.

63.     Upon information and belief the circuit level schematics included depictions of the following features/limitations found in the following claims of the '096 patent. Claim 1: a system for connecting a workstation of the type that includes a keyboard, a cursor control device and a video monitor to a number of computers; a programmable switch; a first interface circuit; a programmed logic circuit; and a second interface circuit. Claim 6: a system including a workstation of the type that includes a keyboard, cursor control device and a video monitor and a plurality of individual computers; transmitting keyboard, cursor control device signals and video signals between the workstation and a selected computer of the plurality of individual computers through a programmable switch; receiving keyboard and cursor control device signals from the workstation, transmitting the keyboard and cursor control device signals from the workstation to the selected computer through the programmable switch; receiving keyboard, cursor control device and video signals from the selected computer; transmitting the keyboard, cursor control device and video signals from the selected computer to the workstation through the programmable switch. Claim 11: a system for connecting a workstation of the type that includes a keyboard, a cursor control device and a video monitor to a number of computers; a programmable switch; a first interface circuit; a programmed microprocessor; and a second interface circuit. Claim 20: a system for connecting a workstation of the type that includes a keyboard, a cursor control device and a video monitor to a number of computers; a programmable switch; a first interface circuit; a programmed microprocessor; and a second

interface circuit. Claim 26: a system for connecting a workstation of the type that includes a keyboard, a cursor control device and a video monitor to a number of computers; a programmable switch; a first interface circuit; a processor; and a second interface circuit. Claim 32: a system including a workstation of the type that includes a keyboard, a cursor control device and a video monitor and a plurality of computers; transmitting keyboard and cursor control device signals from the workstation to the selected computer, and transmitting keyboard, cursor control device and video signals from the selected computer to the workstation.

64.    Upon information and belief the individuals identified above owed a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56 and knowingly failed to provide the Examiner with documentation and/or materials which described the relevant features of the Avocent Products including at least the circuit schematics for the Avocent Products. Instead, to the extent those persons provided any information to the USPTO concerning the Avocent Products, they only provided the Examiner with product brochures and user manuals, which omitted relevant features corresponding to the claim limitations described herein, and instead focused on superficial descriptions of the Avocent Products. Neither the documents submitted to the USPTO relating to the Avocent Products, nor any other prior art of record submitted during prosecution of the application for the '096 patent, disclosed all the features of the claims that the circuit schematics for the Avocent Products disclosed, and therefore those circuit schematics were not cumulative of the prior art of record that the USPTO considered during prosecution. The submission (to the USPTO) of these superficial documents establishes that these individuals knew about the material prior art status of the Avocent Products, otherwise they would not have disclosed those documents to the USPTO. Further, it is not possible that those individuals were not aware of the corresponding circuit schematics for the Avocent Products since schematics

must exist for those commercial products to have been produced, and at least the individuals identified herein each were familiar with the design of those product due to their employment position at Apex (the former name of Avocent). The corresponding failure to submit (to the USPTO) these known circuit level schematics establishes that these individuals intended to deceive the USPTO through their concealment of the critical details of those products.

65.      The materials Avocent provided the Patent Office during the prosecution of the '096 Patent or the applications from which it claims priority included "Apex PC Solutions Brochure, APEX PC Solutions, Redmond, Washington," "Switchback™ User's Guide, Apex PC Solutions, 1995©," "8001/KVM User's Guide, Apex PC Solutions, Date Unknown," "Apex PC Solutions, 'Apex/Desktop Concentrator' advertisement, Date Unknown," and "Apex PC Solutions Advertisement, Date Unknown."

66.      On November 8, 2007, a first request was made for an *ex parte* reexamination of certain claims of the '096 patent.

67.      On December 17, 2007, the USPTO granted the request for *ex parte* reexamination of claims 1, 6, 7, 19, 11, 20, 26 and 32 of the '096 patent.

68.      At least Casey represented the owner of the '096 patent during the course of the '096 patent reexamination proceedings.

69.      Casey owed a duty of candor and good faith to the USPTO with respect to, and throughout the course of, the '096 patent reexamination proceedings. Upon information and belief, Scott Davidson, Doyle Weeks and Sam Saracino also owed a duty of candor to the USPTO.

70.     Upon information and belief, prior to the '096 patent reexamination, Avocent filed a patent application in Japan ("the Japanese application") claiming priority to the same United States application to which the '096 patent claims priority.

71.     Upon information and belief the '096 patent and the Japanese application contained a substantially similar specification and drawings and disclosed substantially the same alleged invention.

72.     Upon information and belief the '096 patent and the Japanese application contained one or more claims of similar scope.

73.     Upon information and belief responsibility for overseeing the prosecution of the Japanese application was transferred to at least Casey in August/September 2000.

74.     Upon information and belief Casey was retained by Avocent to coordinate and instruct the Japanese patent counsel's prosecution of the Japanese application before the Japanese Patent Office ("JPO").

75.     Upon information and belief Casey, in his role as attorney for Avocent, regularly corresponded with Japanese patent counsel concerning prosecution of the Japanese application.

76.     Upon information and belief during the prosecution of the Japanese application, Casey requested copies of Japanese language documents relating to the prosecution of the Japanese application so that he could analyze the issues and provide guidance for responding to the JPO.

77.     Upon information and belief on June 6, 2001, the JPO rejected claims pending in the Japanese application citing several references, including Japanese Laid-Open Patent Application 5-81196 ("Publication 5-81196"). Publication 5-81196 was particularly significant

because it discloses at least a KV switch and a keyboard switch controller. The Japanese patent counsel forwarded this information to Casey.

78.     Upon information and belief during the prosecution of the Japanese Application, Casey provided the Japanese patent counsel legal analysis regarding the subject matter of the invention and an office action.

79.     Upon information and belief Avocent's Japanese counsel sent a letter to Casey's law firm on July 24, 2001 concerning the JPO's June 6, 2001 rejection of the claims pending in the Japanese application.

80.     Upon information and belief in response to the June 6, 2001 claim rejection by the JPO, the Japanese patent counsel responded, per Casey's instructions, by submitting an appeal of the JPO's decision.

81.     Upon information and belief the Japanese application was provisionally allowed as a patent on February 12, 2003.

82.     Upon information and belief at least some of the provisionally allowed patent claims of the Japanese application were similar in scope to claims in the '096 patent.

83.     The provisionally allowed Japanese application was published in Japan for opposition on June 3, 2003.

84.     Upon information and belief on December 3, 2003, an opposition proceeding was initiated in the JPO challenging the validity of the provisionally allowed claims in the Japanese application. The initial opposition brief cited several references alleged as invalidating those claims, including at least Publication 5-81196 and Japanese Laid Open Application 5-27721 ("Publication 5-27721"). Publication 5-27721 was particularly significant because it includes a KV switch and a video signal selection system. This information was sent to Casey.

85.     Upon information and belief on April 6, 2004, prior to the first reexamination of the '096 patent, the JPO issued a Notice of Reasons for Revocation of the provisionally allowed claims of the Japanese application based at least in part on Publication 5-81196 and Publication 5-27721. This information was sent to Casey.

86.     Upon information and belief on June 21, 2004, Casey told the Japanese patent counsel that "we are in the process of preparing instructions" on how to respond to the Notice of Reasons for Revocation.

87.     Upon information and belief on October 6, 2004, the Japanese patent counsel submitted amendments to the provisionally allowed claims in the Japanese opposition proceeding. The amendments were made in an attempt to distinguish the claims from the cited prior art, including Publication 5- 81196 and Publication 5-27721.

88.     Upon information and belief on January 6, 2005, the JPO dismissed the opposition and issued certain Japanese patent claims, but only after (and on the basis that) the provisionally allowed claims had been amended to overcome the JPO's rejections based on Publication 5-81196 and Publication 5- 27721.

89.     Upon information and belief Publication 5-81196 and Publication 5-27721 were material to the patentability of the claims of the '096 patent because no other prior art before the Patent Office included as many of the elements of claim 1 of the '096 patent as did the Publications.

90.     Publication 5-81196 was published on April 2, 1993. Accordingly, Publication 5-81196 qualifies as prior art under 35 U.S.C. § 102(b).  Publication 5-81196 was not before the Office during the original prosecution of the '096 patent.

91.     The '096 patent discloses and claims a keyboard-video-mouse switch.
Publication 5-81196 also discloses a keyboard-video switch. In particular, Publication 5-81196 is
directed to a video switching system.  The system includes multiple user terminals, each with a
keyboard and video display, and each user terminal may connect to any of multiple host
computers through a switch matrix controller and keyboard switch controller. Publication 5-
81196 at p. 4 ¶ 1, and Figs. 1 and 5.

92.     Publication 5-27721 was published on February 5, 1993.  Accordingly,
Publication 5-27721 qualifies as prior art under 35 U.S.C. § 102(b). Publication 5-27721 was not
before the Office during the prosecution of the '096 patent.

93.     Publication 5-27721 discloses a keyboard-video switch. In particular, Publication
5-27721 is directed to a video signal selection system. The system includes multiple user
terminals, each   with a keyboard and video display, and each user terminal may connect to any
of multiple host computers through a video signal switcher and controller. Publication 5-27721 at
Fig. 1.

94.     Upon information and belief publications 5-81196 and 5-27721, in combination
with other prior art, disclose each limitation of claim 1 of the '096 patent.

95.     The Patent Office during the first reexamination of the '096 patent, stated that
prior art combinations before the Examiner did not include claim 1 limitations such as a
programmed logic circuit that transmits keyboard or other input signals to the programmable
switch and programmed logic circuit to control the on-screen programming circuit to produce the
video signals.

96.     Upon information and belief Publication 5-81196 and Publication 5-27721 depict features that were not disclosed in like combination in any other prior art references of record during the original prosecution of the '096 patent.

97.     Upon information and belief the similarity between the claims of the '096 patent and Publication 5-81196 are evident from a comparison of Figure 1 of each. If either figure were rotated 180 degrees, the disclosed architectures of the two references appear nearly identical.

98.     Publication 5-81196 at Fig. 1 depicts a system with keyboards (15-1 to 15-n), video monitors (14-1 to 14-n), and computers (source terminal controllers 2-1 to 2-n). Upon information and belief  Publication 5-81196 explains that source terminal controllers 2 connect to "an external host computer." This disclosure corresponds to the preamble of claims 1, 6, 10, 11, 20, 26, and 32 in the '096 patent.

99.     Publication 5-27721 depicts at Figure 1 a system showing keyboards (4a2 – 4m2), video monitors (4a1 – 4m1), and computers (information terminal devices 1a to 1n). This disclosure corresponds to the preamble of claims 1, 6, 10, 11, 20, 26, and 32 in the '096 patent.

100.    The first element of claim 1 recites "a programmable switch for routing keyboard and cursor control signals from the workstation to a selected computer and for routing video signals from the selected computer to the video monitor of the workstation."

101.    Fig. 1 of Publication 5-81196 depicts a switch matrix controller 8 (for routing video signals) and part of keyboard switch controller 9 (a portion of which routes keyboard signals).

102.    Fig. 1 of Publication 5-27721 depicts a video signal switcher 3a (for routing video signals) and part of controller 3b (a portion of which routes keyboard signals), which corresponds to this first element of claim 1.

42

103.    The second element of claim 1 of the '096 patent recites "a first interface circuit for receiving keyboard and cursor control device signals from the workstation."

104.    Fig. 1 of Publication 5-81196 depicts workstation controllers 13-1 to 13-n, which corresponds to this second element of claim 1 of the '096 patent. 89. Fig. 1 of 5-27721 depicts control units 4a3 to 4m3, which corresponds to this second element of claim 1 of the '096 Patent.

105.    The fourth element of claim 1 recites "a programmed logic circuit coupled to the first interface that transmits the keyboard and cursor control device signals to the programmable switch and controls the on-screen programming circuit to produce the video signals upon the detection of a predefined input from a user of the workstation, the programmed logic circuit further operating to detect keyboard or cursor control device signals received while the onscreen programming circuit is producing video signals on the video monitor and to control the programmable switch in response to the keyboard or cursor control device signals detected."

106.    Upon information and belief Fig. 1 of Publication 5-81196 depicts part of keyboard switch controller 9 (a portion of which monitors for a "predefined input" from the user as described at pp. 9-10, ¶¶ 27- 28) , which corresponds to this fourth element of claim 1 of the '096 patent.

107.    Upon information and belief  Fig. 1 of Publication 5-27721 depicts part of controller 3b (a portion of which monitors for a "predefined input" from the user as described at p. 6, ¶ 16(1)-(3)), which corresponds to this fourth element of claim 1 of the '096 patent.

108.    The final element of claim 1 recites "a second interface circuit disposed between the programmable switch and the selected computer for supplying the keyboard and cursor control device signals routed through the programmable switch to the selected computer."

109.    Fig. 1 of Publication 5-81196 depicts a source terminal with interfaces 5-1 to 5-n, which corresponds to this final element of claim 1 of the '096 patent. 95. Fig. 1 of Publication 5-27721 depicts key data converters 2a2 to 2n2, which corresponds to this final element of claim 1 of the '096 patent.

110.    Upon information and belief no single prior art reference of record during prosecution of the application for the '096 patent disclosed all of these limitations in the combination disclosed in Publication 5-81196 and Publication 5-27721, and therefore those publications were not cumulative of the prior art of record.

111.    The material, non-cumulative nature of Publication 5-81196 and Publication 5-27721 is further evidenced by the fact that the USPTO ordered reexamination of claims 1-10, 14, and 16 in the '264 patent based in part on Publication 5-81196. Upon information and belief during prosecution of the '264 patent, Casey distinguished the patentability of the '264 Patent claims from the '096 patent claims on the basis that the '264 patent claims are directed to an analog embodiment, whereas the '096 patent claims are not so limited. This distinction confirms the material, noncumulative nature of Publication 5-81196 and Publication 5-27721 with respect to the '096 Patent since Casey's own argument necessarily means that the '096 patent claims cover more than the '264 patent claims, at least in regard to the alleged analog distinction.

112.    On December 17, 2007, the USPTO ordered the reexamination of the '096 Patent. Casey represented Avocent during the course of the '096 patent reexamination. Casey, who was under a duty of candor and good faith under 37 C.F.R. § 1.56, was made aware by USPTO rules that he was encouraged to carefully examine the prior art cited in the prosecution of the Japanese application for citing to the USPTO.

113.    Upon information and belief, Casey, who owed a duty of candor and good faith to the USPTO during the course of the '096 reexamination, knew of the existence and materiality of Publication 5-81196 and Publication 5-27721 with respect to the claims of the '096 Patent that were the subject of the reexamination. As described in more detail above, upon information and belief his knowledge of the material, noncumulative nature of these Publications is evident at least from: (a) the fact that the JPO had relied on those Publications to reject claims similar to those in the '096 patent; (b) his working knowledge of those Publications obtained while instructing his Japanese co-counsel on how to respond to the JPO's rejection of claims similar to those in the '096 patent; (c) his acquiescence in and/or conclusion that the Japanese claims, which were similar to those in the '096 patent, had to be amended before the JPO would allow them to issue; and/or (d) his knowledge that the rules of the USPTO required him to cite the Publications in such circumstances.

114.    Within a one week period during the course of the '096 patent reexamination, Casey submitted to the USPTO a list of nearly eight hundred documents for the Examiner to consider. Casey submitted part of these documents in a February 25, 2008 Information Disclosure Statement ("the Feb. 25, 2008 IDS").

115.    The Feb. 25, 2008 IDS listed Publication 5-81196 and Publication 5-27721.

116.    Upon information and belief the USPTO made Casey aware that in complying with his duty of candor and good faith, if they were to submit a long list of documents, they were encouraged to highlight those documents which were specifically brought to their attention and/or are known to be of most significance.

117.    When Casey submitted the Feb. 25, 2008 IDS he in no way highlighted or brought to the Examiner's attention Publication 5-81196 or Publication 5-27721. Further, when he

attached those two Publications (along with many of the other cited references), he attached only the Japanese language versions of them, along with an English translation of only their Abstracts.

118.    Upon information and belief Casey knew he was obligated to provide the USPTO with a concise explanation of the relevance of Publication 5-81196 and Publication 5-27721.

119.    Upon information and belief Casey failed to provide the USPTO with a concise explanation of the relevance, as it was known to him, of any of the numerous foreign language references he cited, including Publication 5-81196 and Publication 5-27721.

120.    Upon information and belief when providing the USPTO Publication 5-81196 and Publication 5-27721, Casey merely told the USPTO that these "were provided to Applicant in a corresponding litigation by the re-examination requester and/or one of the co-defendants of the re-examination requester." This statement was misleading.

121.    Upon information and belief Casey failed to advise the Examiner that these publications were provided to Casey during the prosecution of Avocent's Japanese application and were the source of claim rejections in the related Japanese patent prosecution.

122.    Upon information and belief Casey had additional knowledge of the contents and significance of Publication 5- 81196 and Publication 5-27721 beyond that which appeared in the translated abstracts he provided the Examiner, however he failed to provide that additional information to the Examiner.

123.    Upon information and belief, in submitting an Oct. 30, 2008 IDS Form 1449, Casey listed English language abstracts of Publication 5-81196 and Publication 5-27721, however he continued to fail to inform the Examiner of the relevance of these references, i.e., that these as well as other foreign language publications formed the bases for rejections of Avocent's claims in the Japanese application and why.

124.    Upon information and belief Casey was obligated to refrain from submitting partial translations and concise explanations that he knew would misdirect the Examiner's attention from the reference's relevant teachings.

125.    Casey's submission of translations of just the abstracts of Publication 5-81196 and Publication 5-27721, without providing further information concerning their relevance to Avocent's application, misdirected the Examiner's attention from the references' relevant teachings.

126.    On June 22, 2009 Casey submitted another IDS in the '096 Patent reexamination that included Publication 5-27721 and a partial translation thereof. Upon information and belief the partial translation had been prepared by the same Japanese patent counsel that had been prosecuting, at Casey's direction, the Japanese application.

127.    When Casey submitted the partial translation of Publication 5-27721, he was required to provide the Examiner with a concise statement of the relevance of the reference. Casey again failed to advise the Examiner that Publication 5-27721 was the basis of claim rejections in an opposition with respect to the Japanese application and why.

128.    Upon information and belief the partial translation of Publication 5-27721 Casey submitted omitted translations of portions of Publication 5-27721 that were highly relevant to the consideration of patentability of the claims pending in the '096 patent reexamination. Upon information and belief Casey submitted the partial translation even though he was aware that it would misdirect the Examiner's attention from the reference's relevant teachings.

129.    Upon information and belief Casey's partial translation of Publication 5-27721 failed to include a translation of Figure 1, which depicts the structure of the prior art reference

and is essentially identical to Figure 1 of the '096 patent and is thus critical for understanding its relevance.

130.    Upon information and belief during the '096 patent reexamination, Casey also made several representations to the Examiner to obtain claim confirmation that were false and/or misleading.

131.    In response to obviousness claim rejections in the '096 patent reexamination, Casey affirmatively asserted that it was only after a Rose employee viewed Avocent's KVM switch with on-screen display that Rose introduced such a switch.

132.    In response to further claim rejections in the '096 patent reexamination, Casey affirmatively asserted there was objective evidence that the authors of the Guttag reference never made the combination of references that the Examiner alleged was obvious until after they saw Avocent's alleged invention. Moreover, Casey affirmatively asserted to the USPTO that there was no evidence Mr. Macourek made the proposed combination before Avocent's filing date.

133.    Upon information and belief the statements Casey made, including those reflected in the preceding two paragraphs were misleading and/or false.

134.    Upon information and belief before the date Casey made those representations to the USPTO, Rose had produced documentary evidence to Avocent during the course of litigation between the two companies that contradicts the statements Casey made.

135.    During the course of the Cybex litigation, persons who later became involved in the prosecution of the '096 patent reexamination made statement contradictory to statements made during prosecution of the '096 patent reexamination. Casey made arguments and representation for patentability that were contradicted by arguments and representations made or adopted by Doyle Weeks and Scott Davidson.

136.     Casey argued, at least in a response to a final rejection in Reexamination Control No. 90/008,890, that the Examiner applied an unreasonably broad construction to claims of the '096 patent, including claim 1, and that the Examiner could not consider functionality in a workstation as part of the allegedly claimed system for connecting a workstation to a remote computer. Casey's argument sought to avoid the prior art rejection and was made for the purpose of establishing patentability.

137.     Casey deliberately failed to disclose that other persons associated with the prosecution of the '096 patent made contradictory statements regarding the scope of the claims of the related '842 patent. Weeks directed or authorized statements in Cybex Answers to Interrogatories (4 and 15) in the Cybex litigation, the Cybex Attempted Protest and Petition to Waive Rules, Cybex Motions for Partial Summary Judgment of Invalidity, and Cybex Request for Interference With the '212 patent which construe claims related to the '096 patent to encompass functionality provided in the workstation with the claimed systems of the '096 patent claims. Such statements include, without limitation, claim charts applying the '212 patent and establishing the invalidity of the '842 patent claims.

138.     Casey knew at least that Weeks and Davidson, who are persons associated with the prosecution of the '096 patent reexamination, made arguments that a prior art workstation embodying, among other things, an on-screen programming circuit, was part of a claimed switching system for connecting the workstation to a remote computer. Casey intended to mislead the Examiner to adopt a narrowing construction to overcome a final rejection without amending, and deliberately failed to disclose that persons associated with the prosecution adopted a construction similar to the Examiner's to further the attempt to mislead. Casey also knew that in related patents, namely the '264 patent, the applicant presented claims positively

reciting that image generating circuitry resides between a computer-side interface and a user-side interface.

139.    Casey further presented arguments and evidence of alleged commercial success related to claims of the '096 patent. The evidence included declarations from William Kerr and from Doyle Weeks presented to demonstrate the purported commercial success attributable to the use of on-screen display in a KVM switch system. Casey failed to direct the Examiner's attention to material statements made by Weeks and Davidson in the Cybex litigation related to commercial success. Messrs. Weeks and Davidson made or authorized statements in Cybex's Motion for Partial Summary Judgment of Invalidity including:

> In practice, every patentee tries to salvage its invalid patent claims by relying on claims that disputed material facts exist as to commercial success. However, at best, commercial success is only a factor to be weighed in a close case of obviousness. [citation omitted]. But the facts here do not present a close case. The clear and convincing facts plainly establish that it was Fox Network Systems who first employed the claimed on-screen display in the KVM field and that the operation, use and structure of on-screen display circuitry was made well-known to those skilled in the field of electronic devices by the publication of the Key-View patent.

140.    Casey, Weeks and others associated with the prosecution had a duty to direct the Examiner's attention to statements material to evaluating commercial success, including all statements made or authorized by Weeks and Davidson in the Cybex litigation because such statements were contradictory to the arguments Casey was advancing in the reexamination of the '096 patent. Casey intentionally did not make the Examiner aware of these statements in attempt to mislead the Examiner.

141.    Casey, Weeks and others associated with the prosecutions also failed to disclose material information related to on-screen display used in remote KVM over IP products, which

use of on-screen display Avocent  does not consider covered by the '096 patent. Such information would have been material to the Examiner's consideration of commercial success. Casey deliberately withheld this material information to mislead the Examiner as to the relative importance of the on-screen display feature to commercial success.

142.    Casey further presented evidence from Joseph MacAlexander who purported to address how a person of ordinary skill in the art would have viewed the prior art the Examiner relied upon in rejecting claims of the '096 patent. In his Supplemental Declaration, MacAlexander stated that he was setting forth his explanation "from a technical standpoint viewed through the eyes of one skilled in the KVM switch art in August 1995". Casey failed to disclose that MacAlexander had previously opined or otherwise testified to the level of skill in the art relevant to the '096 patent, particularly in deposition testimony in the Raritan litigation. The testimony was material to the ability of the skilled artisan to handle video signals and incorporate on-screen display in a KVM switch using just the knowledge of the skilled artisan and off-the-shelf components.

143.    Casey further omitted that Weeks and Davidson had taken a different position as to the level of skill in the art in the Cybex litigation. Weeks and Davidson, per Cybex's Motion for Partial Summary Judgment of Invalidity, stated that "[t]he level of skill in this art is an electrical/electronics engineer or computer network switching engineer with experience in video applications." Given this level of skill in the art, Weeks and Davidson either stated or authorized statements in Cybex Answers to Interrogatories that once the skilled artisan knows that KVM switches can incorporate on-screen display, "the particular application of OSD chips and supporting circuitry were also well-known."

144.     Weeks and Davidson either stated or authorized the statement that "KVM switches were wide-spread and well-known in the market many years before the '842 patent filing date." As related to the use of on-screen programming in other technological environments, Weeks and Davidson stated, "The 'on-screen programming' function was an obvious modification to such prior art KVM switches due to its wide-spread use in many different switch environments, such as in prior art video and computer equipment…"

145.     Casey failed to direct the Examiner's attention to these and other statements made by persons associated with the prosecution which contradict arguments Casey presented to rebut the Examiner's combination of prior art uses of on-screen programming circuits for use in a KVM switch. Casey further attempted to mislead or deceive the Examiner as to the appropriate level of skill in the art and the ability of the skilled artisan to incorporate on-screen display technology into KVM switches.

146.     The facts and circumstances described above concerning Casey's knowing failure to disclose material, non-cumulative prior art to the USPTO and his materially false representations of fact to the USPTO establishes that he specifically intended to deceive the USPTO during reexamination of the '096 patent.

147.     The intentional actions of the individuals identified above who owed a duty of candor to the USPTO constitute inequitable conduct.

148.     The inequitable conduct alleged renders all claims in the '096 patent and any patent that claims priority to the '096 patent unenforceable.

149.     Pursuant to 37 C.F.R. § 1.56, each individual associated with the filing and prosecution of the '264 patent application and the reexamination of the '264 patent had a duty of

candor and good faith to the USPTO with respect to, and throughout the prosecution of the application leading to the '264 patent and throughout the reexamination of the '264 patent.

150.     The inventors, Danny L. Beasley, Robert V. Seifert, Paul Lacrampe, James Huffington, Thomas Green, Kevin Hafer, and Rodney Tullett, were all associated with the filing and prosecution of the '264 patent application and therefore had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

151.     Casey was also associated with the reexamination of the '264 patent and therefore had a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose all information known to that individual to be material to patentability.

152.     Upon information and belief prior to the filing date of the '842 patent, the assignee of the '264 patent sold products which embodied a more complete combination of the relevant features of the '264 patent than other prior art that was available to the Examiner during the prosecution of the '264 patent. These products included the Apex SwitchBack, the Apex Desktop Concentrator, and the Apex 8001/KVM (hereinafter "the Avocent Products"). The Avocent Products are prior art to the '264 patent.

153.     Upon information and belief the relevant features of the Avocent Products were described in documents known to and available to the individuals identified above who owed a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56. These documents included at least circuit schematics for the Avocent Products.

154.     For example, the circuit level schematics included depictions of the following features/limitations found in claim 1 of the '264 patent: a switching system; a computer-side interface for simultaneously physically connecting to independent, dedicated cables of respective

keyboard and analog video outputs of plural computers; a user-side interface for physically connecting to a first set of independent, dedicated cables of a first keyboard and an analog video input of a first monitor; and an analog video receiving circuit, connected to the computer-side interface, for receiving analog video signals from one of the plural computers through the computer-side interface.

155.   Those individuals identified above who owed a duty of candor and good faith to the USPTO under 37 C.F.R. § 1.56 knowingly failed to provide the Examiner with documentation and/or materials which described the relevant features of the Avocent Products including at least the circuit schematics for the Avocent products. Instead, to the extent those persons provided any information relating to The Avocent Products to the USPTO, they only provided the Examiner with product brochures and user manuals, which omitted relevant features corresponding to the claim limitations described herein, and instead focused on superficial descriptions of the Avocent Products. Neither the documents submitted to the USPTO relating to the Avocent Products, nor any other prior art of record submitted during prosecution of the application for the '264 patent, disclosed all the features of the claims that the circuit schematics for the Avocent Products disclosed, and therefore those circuit schematics were not cumulative of the prior art of record that the USPTO considered during prosecution. The submission (to the USPTO) of these superficial documents establishes that these individuals knew about the material prior art status of the Avocent Products, otherwise they would not have disclosed those documents to the USPTO. Further, it is not possible that those individuals were not aware of the corresponding circuit schematics for the Avocent Products since schematics obviously exist for those commercial products, and at least the named inventors identified above were familiar with the design of those products due to their employment position at Apex (the

former name of Avocent). The corresponding failure to submit (to the USPTO) these known circuit level schematics establishes that these individuals intended to deceive the USPTO through their concealment of the critical details of those products identified above.

156.    The materials Avocent provided the Patent Office during the prosecution of the '264 Patent or the applications from which it claims priority included "Apex PC Solutions Brochure, APEX PC Solutions, Redmond, Washington," "Switchback™ User's Guide, Apex PC Solutions, 1995©," "8001/KVM User's Guide, Apex PC Solutions, Date Unknown," "Apex PC Solutions, 'Apex/Desktop Concentrator' advertisement, Date Unknown," and "Apex PC Solutions Advertisement, Date Unknown."

157.    During the prosecution of the '264 patent the Examiner rejected pending claims because, if the claims were allowed, they would improperly extend the right to exclude already granted in the '842 Patent.

158.    Casey, on behalf of Avocent, filed a Request for Reconsideration of the claim rejections. Upon information and belief in attempting to have the Examiner reverse his position on the claim rejections, Casey included statements that he knew were inaccurate and misleading.

159.    In an effort to have the Examiner reverse his position, Casey provided statements concerning the scope of the prior art. Casey specifically provided a description of the '212 patent to Perholtz for the purpose of showing the relevant prior art was unable to separately route certain signals (video, keyboard and mouse). Casey provided the Examiner a characterization of the prior art that was false and misleading.

160.    Upon information and belief the detailed information describing the Avocent Products, which Casey knew about but failed to provide to the Examiner, disclosed that these prior art devices in fact included separate routes for analog video and digital keyboard and

mouse data. This undisclosed information concerning the scope of prior art contradicted the statements Casey made to the Examiner – that the prior art systems were unable to separately route certain signals. Casey mischaracterized the prior art and withheld key features of that prior art, which further enabled him to mislead the Examiner.

161.    Upon information and belief as a member of the law firm representing Avocent in multiple litigations, reexamination proceedings, and other prosecution matters, all of which include each of the patents asserted in this case, Casey has an incentive to ensure that none of the patents are invalidated by the USPTO (or otherwise) and that Avocent continues to be issued patents in the asserted patent family. This included the issuance of the '264 patent.

162.    Upon information and belief the facts and circumstances concerning Casey's and the named inventors' knowing failure to disclose material, non-cumulative prior art to the USPTO, and at least Casey's materially false representations of fact to the USPTO, establishes that they specifically intended to deceive the USPTO during examination of the application leading to the '264 patent.

163.    On November 8, 2007, a first request was made for an *ex parte* reexamination of certain claims of the '264 patent.

164.    On December 17, 2007, the USPTO granted the request for *ex parte* reexamination of claims 1-4, 6, 7, 19, 14 and 16 of the '264 patent.

165.    Casey represented the owner of the '264 patent during the course of the '264 patent reexamination proceedings.

166.    Casey owed a duty of candor to the USPTO with respect to, and throughout the course of, the '264 patent reexamination proceedings.

167.    Upon information and belief prior to the '264 patent reexamination, Avocent filed a patent application in Japan ("the Japanese application") claiming priority to the same United States application to which the '264 patent claims priority.

168.    Upon information and belief the '264 patent and the Japanese application contained a substantially similar specification and drawings and disclosed substantially the same alleged invention.

169.    Upon information and belief the '264 patent and the Japanese application contained one or more claims of similar scope.

170.    Upon information and belief responsibility for overseeing the prosecution of the Japanese application was transferred to at least Casey in August/September 2000.

171.    Upon information and belief Casey was retained by Avocent to coordinate and instruct the Japanese patent counsel's prosecution of the Japanese application before the Japanese Patent Office ("JPO").

172.    Upon information and belief Casey, in his role as attorney for Avocent, regularly corresponded with Japanese patent counsel concerning prosecution of the Japanese application.

173.    Upon information and belief during the prosecution of the Japanese application, Casey requested copies of Japanese language documents so that he could analyze the issues and provide guidance for responding to the JPO.

174.    On June 6, 2001, the JPO rejected claims pending in the Japanese application citing several references, including Japanese Laid-Open Patent Application 5-81196 ("Publication 5-81196"). Publication 5-81196 was particularly significant because it discloses at least a KV switch and a keyboard switch controller. Upon information and belief Japanese patent counsel forwarded this information to Casey.

175.    Upon information and belief during the prosecution of the Japanese Application, Casey provided the Japanese patent counsel legal analysis regarding the subject matter of the invention and an office action.

176.    Upon information and belief Avocent's Japanese counsel sent a letter to Casey's law firm on July 24, 2001 concerning the JPO's June 6, 2001 rejection of the claims pending in the Japanese application.

177.    Upon information and belief in response to the June 6, 2001 claim rejection by the JPO, the Japanese patent counsel responded, per Casey's instructions, by submitting an appeal of the JPO's decision.

178.    The Japanese application was provisionally allowed as a patent on February 12, 2003.

179.    Upon information and belief at least some of the provisionally allowed patent claims of the Japanese application were similar in scope to claims in the '264 patent.

180.    The provisionally allowed Japanese application was published in Japan for opposition on June 3, 2003.

181.    On December 3, 2003, an opposition proceeding was initiated in the JPO challenging the validity of the provisionally allowed claims in the Japanese application. The initial opposition brief cited several references alleged as invalidating those claims, including at least Publication 5-81196 and Japanese Laid Open Application 5-27721 ("Publication 5-27721"). Publication 5-27721 was particularly significant because it includes a KV switch and a video signal selection system. Upon information and belief this information was sent to Casey.

182.    On April 6, 2004, prior to the first reexamination of the '264 patent, the JPO issued a Notice of Reasons for Revocation of the provisionally allowed claims of the Japanese

application based at least in part on Publication 5-81196 and Publication 5-27721. Upon information and belief this information was sent to Casey.

183.    Upon information and belief on June 21, 2004, Casey told the Japanese patent counsel that "we are in the process of preparing instructions" on how to respond to the Notice of Reasons for Revocation.

184.    Upon information and belief on October 6, 2004, the Japanese patent counsel submitted amendments to the provisionally allowed claims in the Japanese opposition proceeding. Upon information and belief the amendments were made in an attempt to distinguish the claims from the cited prior art, including Publication 5- 81196 and Publication 5-27721. 169. On January 6, 2005, the JPO dismissed the opposition and issued certain Japanese patent claims, but only after (and on the basis that) the provisionally allowed claims had been amended to overcome the JPO's rejections based on Publication 5-81196 and Publication 5- 27721.

185.    The material, non-cumulative nature of Publication 5-81196 and Publication 5-27721 to the claims of the '264 patent has been confirmed by the fact that the USPTO found a substantial new question of patentability concerning the claims of the '264 patent based on Publication 5-81196 and ordered the reexamination of the '264 patent.

186.    Upon information and belief Publication 5-27721 and Publication 5- 81196 were material to the patentability of the claims of the '264 patent. Both Publication 5- 81196 and Publication 5-27721, in combination with other prior art, discloses each limitation of claim 1 of the '264 patent. No other combination of prior art before the Examiner during prosecution achieved this.

187.    Publication 5-81196 was published on April 2, 1993. Accordingly, Publication 5-81196 qualifies as prior art under 35 U.S.C. § 102(b).  Publication 5-81196 was not before the Office during prosecution of the '264 patent.

188.    Publication 5-27721 was published on February 5, 1993. Accordingly, Publication 5-27721 qualifies prior art under 35 U.S.C. § 102(b).  Publication 5-27721 was not before the office during prosecution of the '264 patent.

189.    With respect to the preamble of claim 1 of the '264 Patent, Publication 5-81196 discloses a switching system. The title of the Publication 5-81196 patent application is "Video Switching System." Upon information and belief the preamble of each of Publication 5-81196's patent claims recites a "video switching system." Upon information and belief according to the Detailed Description of the Invention, the invention of Publication 5-81196 relates to "a video switching system controlling and displaying a plurality of external information (information sources)."

190.    The first element of claim 1 of the '264 patent recites: "a computer-side interface for simultaneously physically connecting to independent, dedicated cables of respective keyboard and analog video outputs of plural computers."

191.    Publication 5-81196 discloses the recited computer-side interface.

192.    Figure 1 of Publication 5-81196 (on the right-hand side) illustrates multiple user workstations 12-1 to 12-n, each of which includes a keyboard 15-1 to 15-11 and one or more display units 14-1 to 14-n. The user workstations 12 are able to connect to multiple source terminal controllers 2-1 to 2-n (on the left-hand side) through a switch matrix controller 8 and a keyboard switch controller 9 (in the center).

193.    Upon information and belief  Publication 5-81196 provides further information about source terminal controllers 2 in connection with Figure 4. Figure 4 shows a stand-alone source terminal controller 2, apart from the complete switching system of Figure 1. Upon information and belief Publication 5-81196 explains that the source terminal controller 2 "receives an information source sent from an external host computer."

194.    Thus, for purposes of the first element of claim 1 of the '264 patent, the source terminal controllers 2-1 to 2-n shown in Figure 1 of Publication 5-81196 constitute the "plural computers" recited in the claim element of the '264 patent, either alone or in combination with the external host computers from which they receive information.

195.    The first element of claim 1 of the '264 patent also recites a "computer-side interface." The '264 Patent's specification uses the term "interface" in multiple ways. For example, Figure 3 of the '264 patent illustrates the computer-side connections of the switching system.

196.    For purposes of the keyboard and mouse signals, the "computer-side interface" is a circuit, keyboard/mouse interface 134, as described in the '264 patent at 5:17-19.

197.    For purposes of the video signals, however, the "computer side interface" is simple connector 144 to which a cable is affixed, as described in the '264 patent at 5:58-59..

198.    Upon information and belief Figure 1 of Publication 5-81196, each "computer" (i.e. source terminal controllers 2-1 to 2-n, alone or in combination with the host computers from which the receive information), connects to the switching system via a source terminal interface (I/F) 5-1 to 5-n.

199.    The "computer-side interface" of the switching system would therefore be the external connectors on source terminal interfaces 5-1 to 5-n to which the keyboard and video

cables are connected. Those connectors are illustrated by the circular and triangular junctions to which the cables connect.

200.    According to the first element of claim 1 of the '264 patent, the computer-side interface is "for simultaneously physically connecting to independent, dedicated cables of respective keyboard and analog video outputs of plural computers."

201.    Publication 5-81196 at Fig. 1, the source terminal interfaces 5-1 to 5-n connect to keyboard and video outputs of the plural computers, source terminal controllers 2-1 to 2-n. Specifically, signal lines 3-1 to 3-n are "independent, dedicated cables" that carry video signals. Signal lines 4-1 to 4-n are "independent, dedicated cables" that carry keyboard signals.

202.    Upon information and belief the use of analog video displays with computers was extremely well known in the art at the time Publication 5-81196 was published. Thus, either the use of analog video was inherent in Publication 5-81196, or it would have been obvious to use analog video in the video switching system of Publication 5-81196.

203.    Publication 5-27721 also discloses this first element of claim 1 of the '264 patent. (Fig. 1, interface devices (2a to 2n), showing keyboard cables (12a to 12n) and video cables (9a to 9n) connecting to plural computers (information terminal devices 1a to 1n)).

204.    The next element of claim 1 in the '264 patent recites "a user-side interface for physically connecting to a first set of independent, dedicated cables of a first keyboard and an analog video input of a first monitor."

205.    Publication 5-81196 discloses multiple such user-side interfaces, consisting of devices labeled in Figure 1 as workstation controllers 13-1 to 13-n.

206.    With respect to the keyboard, Figure 1 of Publication 5-811196 shows independent dedicated cables connecting the user-side interface (i.e. workstation controllers 13-1 to 13-n) to keyboards 15-1 to 15-11.

207.    With respect to the monitor, Figure 1 of Publication 5-81196 shows independent dedicated cables connecting the user-side interface (i.e. workstation controllers 13-1 to 13-n) to the video input of a first monitor (i.e. display units 14-1 to 14-n). With respect to the monitor, Figure 1 of Publication 5-81196 shows independent dedicated cables connecting the user-side interface (i.e. workstation controllers 13-1 to 13-n) to the video input of a first monitor (i.e. display units 14-1 to 14-n).  The keyboard and video signal lines are shown connecting to external connectors on workstation controllers 13-1 to 13-n, illustrated by the circular and triangular junctions.

208.    As confirmed by the '264 patent's specification, in which connector 96 (Fig. 2) serves as a user-side interface and connector 144 (Fig. 3) serves as a computer-side interface, the connectors on workstation controllers 13-1 to 13-n in Publication 5-81196 are also a "userside interface" for purposes of the claim.

209.    Publication 5-27721 at Figure 1 depicts keyboard cables at control units 4a3 to 4m3.

210.    The next element of claim 1 in the '264 patent recites "an analog video receiving circuit, connected to the computer-side interface, for receiving analog video signals from one of the plural computers through the computer-side interface."

211.    Publication 5-81196 discloses the recited analog video receiving circuit, in the form of source terminal interfaces 5-1 to 5-n. In particular, as shown in Figure 1 of Publication 5-81196, source terminal interfaces 5-1 to 5-n receive video signals from the "computers"

(source terminal controllers 2-1 to 2-n, either alone or in combination with the host computers from which they receive information) over video signal lines 3-1 to 3-n. As required by the claim, those video signals pass through the "computer-side interface," the circular connectors 31 illustrated in Figure 1 as connecting the video signal lines to the source terminal interfaces 5-1 to 5-n.

212.    Figure 1 of Publication 5-27721 depicts a video signal switcher 3a.

213.    No prior art reference of record during prosecution of the application for the '264 patent disclosed all of these limitations in the same combination that were disclosed in Publication 5-81196 and Publication 5-27721, and therefore those publications were not cumulative of the prior art of record.

214.    On December 17, 2007, the USPTO ordered the reexamination of the '264 patent. Casey represented Avocent during the course of the '264 patent reexamination. Casey, who was under a duty of candor and good faith under 37 C.F.R. § 1.56, was made aware by USPTO rules that he was encouraged to carefully examine the prior art cited in the prosecution of the Japanese application for citing to the USPTO.

215.    Upon information and belief Casey, who owed a duty of candor and good faith to the USPTO during the course of the '264 reexamination, knew of the existence and materiality of Publication 5-81196 and Publication 5-27721 with respect to the claims of the '264 patent that were the subject of the reexamination.  Upon information and belief his knowledge of the material, noncumulative nature of these Publications is evident at least from: (a) the fact that the JPO had relied on those Publications to reject claims similar to those in the '264 patent; (b) his working knowledge of those Publications obtained while instructing his Japanese co-counsel on how to respond to the JPO's rejection of claims similar to those in the '264 patent; (c) his

acquiescence in and/or conclusion that the Japanese claims, which were similar to those in the '264 patent , had to be amended before the JPO would allow them to issue; and/or (d) his knowledge that the rules of the USPTO required him to cite the Publications in such circumstances. During the course of the '264 patent reexamination, Casey submitted to the USPTO a list of nearly eight hundred documents for the Examiner to consider. Casey submitted part of these documents in an Information Disclosure Statement ("the Feb. 25, 2008 IDS").

216.    The Feb. 25, 2008 IDS listed Publication 5-81196 and Publication 5-27721.

217.    Upon information and belief the USPTO made Casey aware that in complying with his duty of candor and good faith, if he were to submit a long list of documents, he was encouraged to highlight those documents which were specifically brought to his attention and/or known to be of most significance.

218.    Upon information and belief when Casey submitted the Feb. 25, 2008 IDS he in no way highlighted or brought to the Examiner's attention Publication 5-81196 and Publication 5-27721.  Upon information and belief further, when he attached those two Publications (along with many of the other cited references), he attached only the Japanese language versions of them, along with an English translation of only their Abstracts.

219.    Upon information and belief Casey knew he was obligated to provide the USPTO with a concise explanation of the relevance of Publication 5-81196 and Publication 5-27721.

220.    Upon information and belief Casey failed to provide the USPTO with a concise explanation of the relevance, as it was known to him, of any of the numerous foreign language references he cited, including Publication 5-81196 and Publication 5-27721.

221.    Upon information and belief when providing the USPTO Publication 5-81196 and Publication 5-27721, Casey merely told the USPTO that these "were provided to Applicant in a

corresponding litigation by the re-examination requester and/or one of the co-defendants of the re-examination requester." This statement was misleading.

222.    Upon information and belief Casey failed to advise the Examiner that these publications were provided to Casey during the prosecution of Avocent's Japanese application and were the source of claim rejections in the related Japanese patent prosecution.

223.    Upon information and belief Casey had additional knowledge of the contents and significance of Publication 5- 81196 and Publication 5-27721 beyond that which appeared in the translated abstract he provided the Examiner, however he failed to provide that additional information to the Examiner.

224.    In submitting an Oct. 30, 2008 IDS Form 1449, Casey listed English language abstracts of Publication 5-81196 and Publication 5-27721, however, he continued to fail to inform the Examiner of the relevance of these references, i.e., that that these as well as other foreign language publications formed the bases for rejections of Avocent's claims in the Japanese application and why.

225.    Casey was obligated to refrain from submitting partial translations and concise explanations that he knew would misdirect the Examiner's attention from the reference's relevant teachings.

226.    Upon information and belief Casey's submission of translations of just the abstracts of Publication 5-81196 and Publication 5-27721 without providing further information concerning their relevance to Avocent's Japanese application, misdirected the Examiner's attention from the references' relevant teachings.

227.    On June 22, 2009, Casey submitted an IDS in a related reexamination proceeding that included Publication 5-27721 and a partial translation thereof. Upon information and belief

the partial translation had been prepared by the same Japanese patent counsel that had been prosecuting, at Casey's direction, the Japanese application. Upon information and belief the partial translation had been prepared before the reexamination certificate for the '264 patent issued.

228.    Casey was obligated to provide the partial translation of Publication 5-27721 to the USPTO during the course of the '264 patent reexamination, but failed to do so.

229.    Upon information and belief because Casey and/or others who owed a duty of candor to the USPTO failed to provide the Examiner with the partial translation of Publication 5-27721, the Examiner was not able to consider material information concerning the prior art reference.

230.    Upon information and belief during the '264 patent reexamination, Casey also made several representations to the Examiner to obtain claim confirmation that were false and/or misleading.

231.    Upon information and belief in response to claim rejections in the '264 reexamination, Casey affirmatively asserted that it was only after a Rose employee viewed Avocent's KVM switch with on-screen display that Rose introduced such a switch. Casey made this statement in an effort to overcome claim rejections by the Patent Office based on 35 U.S.C. § 103.

232.    Upon information and belief the statements Casey made, were misleading and/or false.

233.    Upon information and belief before the date Casey made the representations referenced above to the USPTO, Rose had produced documentary evidence to Avocent during

the course of the litigations between the two companies that contradicts the statements Casey made.

234.    Casey is a member of the firm of Davidson, Berquist, Jackson and Gowdey LLP, the same firm representing Avocent in various US litigation

235.    Upon information and belief as a member of the law firm representing Avocent in multiple litigations, reexamination proceedings, and other prosecution matters, all of which include the each of the patents asserted in this case, Casey has an incentive to ensure that none of the patents are invalidated by the USPTO (or otherwise) and that Avocent continues to be issued patents in the asserted patent family.

236.    Upon information and belief the facts and circumstances concerning Casey's knowing failure to disclose material, non-cumulative prior art to the USPTO and his materially false representations of fact to the USPTO establishes that he specifically intended to deceive the USPTO during reexamination of the '264 patent.

237.    The intentional actions of the individuals who owed a duty of candor to the USPTO constitute inequitable conduct.

238.    This inequitable conduct renders all claims in the '264 patent unenforceable.

### G. - Intent to Deceive

239.    The foregoing acts and omissions demonstrate a pattern of intent to mislead the Examiner during the prosecution and reexaminations of the '842, '096, '176, and '264 patents.

240.    Without limitation of any other allegations herein, such acts by Apex, Avocent Corp., and/or Avocent Redmond or its agents include the failure to disclose Perholtz in the prosecution of the '842 patent, the failure to disclose the Cybex litigation in the prosecution of the '096, '176 and '264 prosecutions, the failure to disclose the invalidity and inequitable

conduct defenses raised in the Cybex litigation, the failure to disclose the detailed applications of prior art to the '842 patent claims in the Cybex litigation, the failure to disclose motions directed to invalidity in the Cybex litigation, the failure to disclose the admissions set forth in the Stipulated Dismissal in the Cybex litigation, the burying of the '212 patent among 100 references in the '096 prosecution, the failure to disclose the violation of the duty of candor raised in the Cybex Protest Request, the failure to disclose the material information in the Cybex Request for Interference, the failure to disclose the most relevant art known at the time, and the failure to properly disclose the references cited in the foreign prosecution during reexamination.

241.    The '096, '264, and '176 patents are unenforceable due to inequitable conduct during prosecution of the applications that matured into those patents and during reexamination of those patents.  One or more individuals, who owed a duty of candor to the U.S. Patent and Trademark Office ("USPTO") during prosecution of and reexamination of the applications for those patents, deliberately and knowingly withheld material information and/or made materially misleading statements to the USPTO in connection with the prosecution of those applications in violation of their duty of candor to the USPTO, as prescribed by 37 C.F.R. § 1.56, and with the specific intent to deceive the USPTO Examiners responsible for considering the applications/patents.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to raise such further and additional defenses as may be available upon the facts to be developed in discovery and under applicable substantive law.

## PRAYER FOR RELIEF

**WHEREFORE**, Raritan prays for judgment in its favor and an Order:

a.   That Raritan does not infringe, directly or indirectly, any valid and enforceable claim of the '096 patent;

b.   That Raritan does not infringe, directly or indirectly, any valid and enforceable claim of the '176 patent;

c.   That Raritan does not infringe, directly or indirectly, any valid and enforceable claim of the '264 patent;

d.   The '096 patent is invalid for failure to satisfy the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and/or 112;

e.   The '176 patent is invalid for failure to satisfy the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and/or 112;

f.   The '264 patent is invalid for failure to satisfy the conditions for patentability set forth in 35 U.S.C. §§101, 102, 103 and/or 112;

g.   The '096, '176 and '264 patents are unenforceable on the basis of inequitable conduct.

h.   Enjoining Avocent from litigating any action in any court against Raritan or its customers for infringement of one or more of the '096, '176, and '264 patents based on the manufacture, use, offer for sale, sale or importation into the United States of Raritan's Dominion KX II products;

i.   That this case be declared "exceptional" and award Raritan its reasonable attorneys' fees, expenses, and costs in this action pursuant to 35 U.S.C. § 285;

j.      Granting Raritan such other and further relief as this Court may deem just and

proper.


Dated:    October 1, 2010

                                   s/Elvin Esteves

                                   Vincent E. McGeary
                                   Michael Cukor
                                   Elvin Esteves
                                   **GIBBONS P.C.**
                                   One Gateway Center
                                   Newark, New Jersey  07102
                                   (973) 596-4500 (phone)
                                   (973) 639-6279 (fax)

                                   *Attorneys for Defendants*