UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AVOCENT REDMOND CORP.,

                                    Plaintiff,

                -against-

RARITAN AMERICAS, INC.,

                                    Defendant.
-------------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-31-12  TS

10 Civ. 6100 (PKC)

MEMORANDUM AND
ORDER

P. KEVIN CASTEL, District Judge:

   Avocent Redmond Corp. ("Avocent") brought this action against Raritan

Americas, Inc. ("Raritan") asserting claims of patent infringement and breach of licensing

agreement.  Avocent seeks summary judgment on a subset of the claims in this action—

infringement of claim 11 of the 5,884,096 patent (the "'096 patent") by Raritan's KX II and KSX

II products and breach of the licensing agreement.  It also seeks summary judgment dismissing

the affirmative defense of inequitable conduct.

   Raritan opposes Avocent's motions and seeks summary judgment in its favor on

non-infringement by the KX II and KSX II of the '096 patent, claim 1 of the 7,818,367 patent

(the "'367 patent") and claim 1 of the 7,113,978 (the "'978 patent").  Raritan has asserted the

following affirmative defenses to Avocent's contract claim: lack of consideration, failure to

mitigate, failure to perform conditions precedent, penalty provisions unenforceable as contrary to

public policy, violation of the covenants of good faith and fair dealing, equitable estoppel,

substantial non-infringing uses, invalidity, patent misuse, inequitable conduct and satisfaction

and accord.  It also seeks summary judgment dismissing the breach of licensing agreement claim

on the defense of equitable estoppel, declaring the '096 patent to be invalid and striking all claims of willful infringement.

This Court held argument on the pending motions, lasting five hours.  For the reasons discussed below, Avocent's motion for summary judgment is granted, in part, and denied, in part.  Raritan's motion for summary judgment is also granted, in part, and denied, in part.  The parties' motions to seal certain exhibits are granted, in part, and denied, in part.

BACKGROUND

Avocent accuses two of Raritan's keyboard-video-mouse ("KVM") switching systems of infringing claim 11 of the '096 patent.  Avocent had previously asserted claims of infringement of the '096 patent and four other patents against Raritan in a prior action before this court.  Avocent Redmond Corp. v. Raritan Computer, Inc., 01 Civ. 4435 (PKC).  The prior action was settled on May 12, 2005 in an agreement that granted Raritan a license to use the patented technology (the "Settlement Agreement").  The Settlement Agreement provided that Raritan would make quarterly royalty payments on "Licensed Products" up to a maximum of 5% of Net Reportable Sales but not less than $750,000.  (Settlement Agreement ¶ 3.1(c))  The parties also agreed not to sue each other for patent infringement or invalidity during the term of the Settlement Agreement.  (Settlement Agreement ¶ 5.1)  After two extensions, the Settlement Agreement expired on August 13, 2010.  The next day, Avocent initiated this action.

ANALYSIS

I.  **Summary Judgment Standard**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, sufficient to demonstrate that he or she is entitled to relief as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law," meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party.  Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–88 (1986).  In reviewing a motion for summary judgment, the court may scrutinize the record, and grant or deny summary judgment as the record warrants.  Fed. R. Civ. P. 56(c)(3).  In the absence of any disputed material fact, summary judgment is appropriate.  Fed. R. Civ. P. 56(a).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation."  Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted); see also Anderson, 477 U.S. at 249–50 (summary judgment may be granted if the opposing evidence is "merely colorable" or "not significantly probative")

(citations omitted).  An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."  Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (quotation marks omitted).

Local Civil Rule 56.1 of this District requires a summary judgment movant to submit a statement with numbered paragraphs setting forth "the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Civil Rule 56.1(a).  "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."  Local Civil Rule 56.1(c).  "Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Civil Rule 56.1(d).  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c).  "'Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"  Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)).

## II.   Infringement

The Court first turns to the parties' cross-motions for summary judgment on infringement of claim 11 of the '096 patent.   The Court will also consider Raritan's motion for a

finding of non-infringement by the KX II and KSX II of claim 1 of the '096 patent and of the '367 and '978 patents.

In an infringement action, the court must first determine the scope and meanings of a patent claim and then compare the properly construed claims to the allegedly infringing device.  See Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998).  Claim construction presents a question of law to be decided by the Court.  Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996).  Whether a claim covers the accused products is a fact question.  Id.  Direct infringement of a patent requires a party to use each element of the claimed product.  BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378 (Fed. Cir. 2007).  If even one claim limitation is not present in the accused product, a finding of non-infringement is required.  See e.g., Digital Biometrics v. Identix, Inc., 149 F.3d 1335, 1349 (Fed. Cir. 1998)

### a.  The '096 Patent

Claim 11 of the '096 patent reads:

A system for connecting a workstation of the type that includes a keyboard, a cursor control device and a video monitor to a number of computers comprising:

a programmable switch for routing keyboard and cursor control device signals from the workstation to a selected computer and for routing video signals from the selected computer to the video monitor of the workstation;

an on-screen programming circuit that produces video signals for display on the video monitor;

a programmed microprocessor coupled to the first interface circuit that transmits the keyboard and cursor control device signals to the programmable switch, the microprocessor being further programmed to detect keyboard or cursor control device signals received while the on-screen programming circuit is producing video signals on the video monitor and to control the programmable switch in response to the keyboard or cursor control device signals detected; and

a second interface circuit coupled to the programmable switch for supplying the keyboard and cursor control device signals routed through the programmable switch to the selected computer.

Certain terms of claim 11 were construed in the prior action between the parties. The term "programmable switch" was construed as "a device capable of forwarding packets from one computer/workstation/server to another that permits the user to control the switch." The term "on-screen programming circuit" was construed as "a circuit that produces a display on a monitor that allows a user to control a switch."

Avocent asserts that the "programmable switch" requirement is met by the "Field Programmable Gate Array" ("FPGA") component of Raritan's products. It asserts that the "on-screen programming circuit" requirement is met by the "Z7 Graphics Processor" component and that the "programmed microprocessor" requirement is met by the "PowerPC" component. Avocent has premised its factual showing in support of summary judgment principally on the testimony of three Rule 30(b)(6) designees of Raritan—Mr. Cao, Mr. Cabiente and Mr. Zou. No affidavit or declaration has been submitted by an expert or other witness on behalf of Avocent who identifies each limitation of the claim in the accused products. There is nothing inherently improper in supporting a summary judgment motion in this manner. Rule 30(b)(6) witnesses are testimonial witnesses and while their statements may be admissions by the party, they do not foreclose consideration by the trier of fact of other evidence in the record.

In response to Avocent's motion, Raritan has come forward with the declaration of Mr. McNair, a Professor of Electrical and Computer Engineering at Stevens Institute of Technology, who asserts that the accused products do not infringe. Mr. McNair bases his conclusion on the fact that the FPGA is not programmed to operate a switch but instead the switching and control functions of the KX II and KSX II have been consolidated into the PowerPC. (McNair Decl. at 2-3.) He further states that the Z7 Graphics Processor does not satisfy the claim limitation because it does not produce the content of the displayed image and

6

that the KXII and KSXII do not permit the user to make a selection using a keyboard as required

by the patent. Id. at 3.  Raritan also asserts that Avocent cannot rely on Mr. Cao's testimony to

prove infringement because he was not a software witness and therefore could not and did not

testify as to how the FPGA and PowerPC operate.  (Cao Dep. at 92.)  Raritan has come forward

with evidence sufficient to create a material dispute of fact concerning the operation of the KX II

and KSX II.  Accordingly, summary judgment is denied to both parties as to the '096 patent.

        Further, the parties dispute whether the FPGA must be programmed to operate the

switch described in the first sub-paragraph of claim 11.  Additionally, Raritan states that the KX

II and KSX II do not generate a menu that allows a user to control switch selection by keyboard

and mouse, as allegedly required by the '096 patent.  Raritan also argues, incorrectly, that their

products ability to operate in additional ways not covered by the patent means that there can be

no infringement.

        The language of claim 1 of the '096 patent is substantially similar to claim 11 and

reads:

> A system for connecting a workstation of the type that includes a keyboard, a
> cursor control device and a video monitor to a number of computers comprising:
>
>     a programmable switch for routing keyboard and cursor control signals from
> the workstation to a selected computer and for routing video signals from the
> selected computer to the video monitor of the workstation;
>
>     a first interface circuit for receiving keyboard and cursor control device
> signals from the work station;
>
>     an on-screen programming circuit that produces video signals for display on
> the video monitor;
>
>     a programmed logic circuit coupled to the first interface circuit that transmits
> the keyboard and cursor control device signals to the programmable switch and
> controls the on-screen programming circuit to produce the  video signals upon the
> detection of a predefined input from a user of the workstation, the programmed
> logic circuit further operating to detect keyboard or cursor control device signals
> received while the on-screen programming circuit is producing video signals on

the video monitor and to control the programmable switch in response to the keyboard or cursor control device signals detected; and

a second interface circuit disposed between the programmable switch and the selected computer for supplying the keyboard and cursor control device signals routed through the programmable switch to the selected computer.

The disputed facts described above as to claim 11 apply equally to claim 1 of the '096 patent.  In addition, Raritan argues that only a product that is "in use" would infringe claim 1 of the '096 patent.  Summary judgment on claims 1 and 11 of the '096 patent is denied.

### b.  The '367 and '978 patents

Raritan has also moved for summary judgment of no infringement on the '367 and '978 patents.  It claims that its products do not infringe any of these patents' claims because the products do not infringe the independent claim, claim 1, on which the remaining claims rely.  The relevant text of claim 1 is as follows:

A switching system comprising:

\* \* \* \*

a first analog video processing circuit, interposed between the computer-side connectors and the first set of user-side connectors, for selecting, for at least one sub-region of an image to be displayed on the first monitor, at least one of (1) a portion of the analog video signals received by the first analog video receiving circuit and (2) internally generated analog video signals, to form an output analog video signal that is output to the first monitor via the first user-side video connector….

The parties disagree as to whether Raritan's full-screen menu meets the "at least one sub-region" element of claim 1 of both the '367 and the '978 patents.  The phrase "for selecting, at least one sub-region of an image to be displayed on the first monitor. . ."  is read by Raritan to require that the selectability of the displayed image be limited to one or more sub-regions rather than the entire image.

The Federal Circuit's landmark decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc) emphasized that the purpose of claim construction is to arrive at the ordinary and customary meaning of the disputed term to a person having ordinary skill in the art at the time the patent was filed. Phillips also delineated a hierarchy of evidence that should be considered during claim construction. That hierarchy is (1) the patent's claim language, (2) the patent's specification, (3) the patent's prosecution history, and (4) extrinsic evidence including dictionary definitions, prior art, and expert testimony. Id.

Here, the language of the claim is plain in meaning. The phrase "at least" implies a minimum capability and does not read out selection of the entire image from the claim. The language means that, at a minimum, one sub-region of the image must be selectable but more than the one sub-region may be selected up to and including the entire image. With the claim so construed, the evidence shows that the accused device permits the selection of at least one sub-region of an image because it permits the selection of the entire image. Accordingly, Raritan's motion for summary judgment on the '367 and the '978 patents is denied.

## III.  Willful Infringement

Raritan seeks summary judgment of no willful infringement. Raritan argues that it is entitled to summary judgment because Avocent misled Raritan into believing that it had foregone its rights as a patentee, which precludes a finding of willfulness. Specifically, Raritan informed Avocent by email that it was not paying royalties on the KX II and KSX II because it did not believe those products practiced any of Avocent's patents. Raritan invited Avocent to list any claims that the products infringed but never received a response from Avocent. Raritan also states that because it relied on the opinion of counsel, which stated that Raritan's products did not infringe the asserted patents, its behavior cannot be deemed "objectively reckless."

"[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringements of a valid patent.  . . .[and] must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (citation omitted). Additionally, there can be no willful infringement if the patentee misled the accused infringer into believing that the patentee had forgone his rights. Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., 605 F.3d 1305, 1310 (Fed. Cir. 2010).

The evidence concerning Avocent's conduct raises a disputed issue of material fact as to whether it made a choice to forego its rights as a patentee.  Avocent did not respond to Raritan's initial email for two months and then only to note that Raritan was not paying royalties on the KX II and KSX II.  When asked to identify the claims it believed covered these products, Avocent's General Counsel left a voicemail stating that it would consult outside attorneys and contact Raritan if there were any issues. Avocent did not contact Raritan on this subject again. In support of its argument, Avocent relies on evidence that as early as September 6, 2007, it informed Raritan that the products appeared to use the Licensed Technology.

Separately, the reasonableness of Raritan's reliance on the opinion of outside counsel, which Avocent claims does not cover all of the accused products, also presents a disputed issue of material fact.  Avocent argues that Raritan would have known that the opinion of counsel was incorrect because it was based on an incorrect understanding of the product, a fact that would have been obvious to Raritan engineers.  For these reasons, summary judgment on willful infringement is denied.

## IV.   Invalidity

Raritan seeks to invalidate claims 1 and 11 of the '096 patent for lack of enablement.  Specifically, Raritan asserts that the claims recite the ability to control a switch using mouse inputs to an on-screen display but that the patent does not describe how to achieve mouse control.  Raritan asserts that this is because the inventors had not achieved mouse control until a year after they filed the patent.  The claim language that allegedly is not enabled is: "to detect keyboard or cursor control device signals received while the on-screen programming circuit is producing video signals on the video monitor and to control the programmable switch in response to the keyboard or cursor control device signals detected."

To determine whether the specification requires undue experimentation, which would render the patent invalid for lack of enablement, the Court must look at "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.  In re Wands, 858 F.2d 731, 737 (Fed. Cir. 1988).  The parties dispute whether cursor control was a novel element necessary to distinguish Avocent's invention from the prior art.  (McAlexander Dep. at 9-12, 15-17, 19 and 21-23.)  Raritan asserts, and Avocent disputes, that only keyboard commands could be used to control the switch at the time of the patent application.  (Lacrampe Dep. at 147:20-154:8; Seifert Dep. at 22:5-14, 23:6-24:2 and 25:21-24.)  They also disagree as to the level of knowledge of a person having ordinary skill in the art at the time the patent application was filed.  (Lacrampe Dep. at 152:5-17, 153:6-154:5; McAlexander Decl. at ¶ 4-5; U.S. Patent No. 3,541,541 at Col. 1:56-2:42; U.S. Patent No. 5,550,556 at Col. 1:34-41.)  Specifically, they dispute whether such a person would have known

how to implement cursor control. Material disputes of fact foreclose summary judgment as to invalidity.

### V.  Inequitable Conduct

Raritan's sixteenth affirmative defense is that Avocent procured the relevant patents by inequitable conduct. Avocent has moved for summary judgment urging that none of its actions rose to the level of inequitable conduct. Avocent has submitted a 40-paragraph Local Rule 56.1 statement outlining the facts it contends are both material and not in dispute. Raritan has submitted a 566-paragraph response. Neither party has submitted a narrative statement of facts in its briefs. Raritan asserts inequitable conduct on the basis of two sets of references that were not initially submitted to the Patent and Trademark Office (the "PTO") as prior art—the "Horiuchi and Ishihara References" and the "Perholtz References."

Applying Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc), Raritan must prove by clear and convincing evidence that Avocent misrepresented or omitted material information with the specific intent to deceive the PTO. Intent cannot be inferred solely from materiality. Id. In the case of an omission, the applicant must have made a deliberate decision to withhold a known material reference. Id. When relying on circumstantial evidence, the accused infringer must demonstrate that intent to deceive is the "single most reasonable inference able to be drawn from the evidence." Id. at 1290. In order to prove that an omitted reference is material, Raritan must show by a preponderance of the evidence that the PTO would not have issued a claim had it been aware of the undisclosed prior art, which is commonly referred to as a "but-for" materiality standard. Id. at 1291-92. Affirmative egregious misconduct, such as "filing an unmistakably false affidavit," will also

meet the materiality requirement.  Id.  The patentee need not offer a good faith explanation for the conduct unless the accused infringer first shows that there was intent to deceive.  Id. at 1291.

### a.  The Horiuchi and Ishihara References

Raritan alleges that Avocent withheld two Japanese prior art references, JP 05-27721 ("Horiuchi") and JP 05-81196 ("Ishihara"), that were used to reject claims in Avocent's Japanese patent application for this family of patents.  Raritan asserts that Avocent knew of these references by May 13, 2004 at the latest.  These references were the subject of a third-party re-examination, not initiated by Raritan, that led Avocent to amend several of their claims.  Nine claims of the '978 were rejected by the PTO after it considered these references.  The '096 and '264 patents issued without changes.  The parties dispute the materiality of these references as well as whether Avocent had knowledge of them.

At oral argument, Raritan conceded that the Horiuchi and Ishihara References could not form a basis for inequitable conduct for any claims that issued after the PTO's reexamination, which included consideration of the Horiuchi and Ishihara References, because the "but-for" materiality standard could not be met for those claims.  Summary judgment of no inequitable conduct is granted on that portion of the claims

With respect to the remaining claims based on the Horiuchi and Ishihara References, Avocent argues in its written submissions that the failure to disclose the references was the result of bureaucratic error, which would preclude a finding of intent to deceive.  (Casey Dep. at 42, 287-288)  Specifically, it states that the attorney prosecuting the patent before the PTO did not think he was responsible for filing the disclosure statement and did not know that one had not been filed.  Id.  Avocent asserts that in some cases its "operations desk" is responsible for preparing disclosure statements, which caused patent counsel to believe that he

did not need to file a disclosure statement himself in this case.  (Swenson Dep. at 196.)  Raritan

has come forward with evidence that the prosecuting attorney knew of the Japanese references,

knew of their materiality and had a responsibility to disclose the information to the PTO.  (Casey

Dep. at 280; Raritan's Opposition Ex. 24 and 33.)  Specifically, the prosecuting attorney had

accepted responsibility for overseeing the prosecution of Avocent's patents, was informed that

the Japanese patent application had been rejected on the basis of these references and had

received translated copies of the references.  Id.  Because there are significant disputes as to

issues of material fact, this claim is better suited for resolution by trial before the Court.  As

such, summary judgment is denied.

   b.  **Perholtz References**

    Raritan also asserts that "withholding of the Perholtz reference and associated

litigation material" amounted to inequitable conduct.  Raritan asserts that these references

anticipated all three patents in suit.  Raritan infers an intent to deceive from the fact that Avocent

did not disclose the Perholtz References until three days after a meeting with the patent examiner

during which counsel may have learned that the Notice of Allowance was ready to issue.  (Tullet

Dep. at 217:4-23.)  At oral argument, Raritan also alleged that Avocent's litigation counsel was

aware of these patents but chose not to disclose them even though he was substantially involved

in the patent prosecution.  (See Weeks Dep. 15:20-25; 34:9-21; 37:13 – 41:12; Tullett Dep. 71:4-

9, 191:6-192:4; Avocent Second Amended Privilege Log 121-122, 128, 141, 143-145 and 207.)

Specifically, litigation counsel oversaw patent prosecution, supervised outside counsel and was

responsible for intellectual property enforcement strategy but did not direct patent counsel to

disclose these references or the associated litigation material.  Id.  Avocent asserts that litigation

counsel was not substantially involved in patent prosecution.  (See Saracino Dep. at 274:2-3.)

Because there are significant disputes as to issues of material fact, summary judgment is denied.

**VI.   Breach of Contract**

      The parties disagree as to whether Raritan's KSX, KX II and KSX II products are "Licensed Product[s]" under the terms of the Settlement and License Agreement.  The term "Licensed Product" was defined as "(i) Raritan's Master console ([Models] II, SMX, MXU2, and MX4) switches and associated pods, (ii) Raritan's Paragon ([Models] I and II) switches and associated pods, (iii) Raritan's Dominion ([Models] KX and KSX) switches and associated pods, and (iv) any improvement, successors, or replacements to any of the foregoing that use the Licensed Technology sold by Raritan . . . ."  This includes any component, connector, cable, pod, or part that uses the Licensed Technology that has "no substantial use apart from the Licensed Technology."  The term "Licensed Technology" was defined as "any invention, discovery, or technology that uses, incorporates, or is covered by the Licensed Patents," which is the patent family asserted by Avocent in this action.

      Raritan introduced two products, the KX II and the KSX II, during the term of the Settlement Agreement for which it did not pay any royalties to Avocent.  Before introducing these products, Raritan informed Avocent by email that it did not believe these products required royalty payments under the Settlement Agreement.  (Raritan's Omnibus Motion, Esteves Decl. Ex. 11)  Avocent later contacted Raritan to note that its auditors found that Raritan was not paying royalties on those products but did not identify any implicated patent claims when asked to do so by Raritan.  The terms of the Settlement Agreement do not require Avocent to identify the claims of the patent believed to be infringed.  Rather the Settlement Agreement provides that in the event that Raritan disputes the findings of an audit, it must give "written notice of the

reasons for its disagreement with the audit findings."  The Settlement Agreement requires the parties to try to resolve disagreements with audit findings in good faith but are permitted to seek legal relief after "a reasonable period of time" if they are unable to resolve the disagreement.

The maximum 5% royalty payments were not an absolute condition of the Settlement Agreement and instead hinge on whether the KX II and KSX II practice the Licensed Patents.  (<u>See</u> Settlement Agreement ¶ 5.1) ("[T]he Initial Payment . . . and the Minimum Quarterly Payments described in Section 3.1(b) are absolute and unconditional and given in part as consideration for the stand-still agreement . . . [,] and a final judicial determination of invalidity or unenforceability . . . shall not affect or reduce Raritan's obligation to make [these payments].")  This question is identical to asking whether Raritan's products infringe Avocent's patents.  Because the issues turn on whether Avocent's patents were infringed, a matter on which the Court has denied summary judgment, it also denies summary judgment on the breach of contract claim.

## VII.   Affirmative Defenses

As part of Avocent's motion for summary judgment on its breach of contract claim, it seeks summary judgment on all of Raritan's affirmative defenses.  Raritan only seeks summary judgment on its equitable estoppel defense.

### a.   Equitable Estoppel

Raritan claims that Avocent's inaction and allegedly misleading statements in response to Raritan's decision not to pay royalties on the KX II and KSX II products estops it from pursuing patent infringement and contract claims.  This argument is based on clauses in the Settlement Agreement that required the parties to address accounting disputes in good faith and to provide an opportunity to cure underpayments.  (Settlement Agreement ¶ 3.3)

16

Raritan obtained an opinion from outside legal counsel that the two products did not practice the Licensed Patents and informed Avocent by email that it would not pay royalties on sales of those two products.  Avocent did not respond until two months later when it noted by email that Raritan was not paying royalties on those products.  Raritan asked Avocent to identify the claims it believed covered these products.  Avocent's General Counsel left a voicemail stating that it would consult outside attorneys and contact Raritan if there were any issues. Avocent did not contact Raritan on this subject again.

Raritan has also asserted an "admission against interest" affirmative defense based on statements made by Avocent to the PTO.  Raritan claims that Avocent's statement to the PTO that "[both] Raritan and Trippe have paid and currently continue to pay royalties for use of the . . . patents pursuant to the respective agreements with those parties" amounts to an admission that Raritan was meeting its payment obligations and that Avocent should therefore be estopped from seeking contract damages.  The Court construes Raritan's "admission against interest" defense as nothing more than the submission of the purported admission as evidentiary support for its equitable estoppel defense.

Raritan argues that it reasonably concluded that Avocent did not consider the products to be infringing and that Raritan relied on this conclusion when it invested financial resources in pursuing markets for these products.  Avocent argues that under Washington State law, which governs this claim, estoppel by acquiescence does not arise without full knowledge and a duty to act.  Consolidated Freight Lines, Inc. v. Groenen, 117 P.2d 966, 968 (Wash. 1941). It also points to a "stand-still" provision in the contract that precluded Avocent from suing Raritan for patent infringement for five years.  (Settlement Agreement ¶ 5.1)  Although Avocent could have sued for breach of contract, that claim would have turned on an infringement and

invalidity analysis.  The Settlement Agreement also expressly states that estoppel of "any and all claims" will be tolled during the term of the Settlement Agreement and that neither party "shall during the Term or thereafter assert any defense of . . .estoppel . . . against the other in connection with or on account of such period."  (Settlement Agreement ¶ 5.3)

Raritan asserts that the tolling provision only referred to estoppel of infringement and invalidity claims and does not cover estoppel of a contract claim.  It also argues that estoppel was not premised on a delay caused by the term of the Settlement Agreement but on the allegedly misleading statements made by Avocent.  However, Avocent did not have full knowledge of Raritan's products or why Raritan believed those products were not infringing. Moreover, if Avocent had sued for breach of contract, Raritan would not have been able to assert invalidity as a defense without violating the stand-still provision of the Settlement Agreement. For these reasons, Avocent is entitled to summary judgment that it is not equitably estopped from asserting its breach of contract claim.

### b.  Accord and Satisfaction

In an interrogatory response, but not in its answer, Raritan asserts an accord and satisfaction defense.  "[A]n accord and satisfaction consists of a bona fide dispute, an agreement to settle that dispute, and performance of that agreement."  Perez v. Pappas, 659 P.2d 475, 480 (Wash. 1983).  It is an affirmative defense.  Although there was a bona fide dispute between the parties, there was no agreement to settle that dispute and no performance of any such agreement. Raritan argues that acceptance of the underpayments meets the accord and satisfaction standard. This argument is inconsistent with Raritan's assertions elsewhere that it never believed that there was a dispute because of Avocent's silence.  There is no evidence that there was an agreement to settle the underpayment dispute or that Raritan's payments were made and accepted in

satisfaction of any amounts due.  Therefore, summary judgment is granted in favor of Avocent on the accord and satisfaction defense.

### c.   Lack of Consideration

Raritan asserts that the licensing agreement was unenforceable because there was no consideration for the contracted royalty payments since Avocent's patents are invalid.  "Every contract must be supported by a consideration to be enforceable."  Dybdahl v. Continental Lumber Co., 233 P. 10, 11 (Wash. 1925).  Consideration can be "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." Labriola v. Pollard Group, Inc., 100 P.3d 791, 793 (Wash. 2004) (citations omitted).  Here, Avocent licensed the right to practice its patents in exchange for Raritan's royalty payments. Since no determination of invalidity was made during the contract term, Raritan received the benefit of its bargain during that term.  Summary judgment in favor of Avocent is granted.

### d.   Invalidity

Raritan similarly argues that the invalidity of the patents absolves it from having to pay any remaining royalties.  Raritan ceased royalty payments before the license expired but did not challenge the validity of the patent until after expiration.  Avocent seeks summary judgment finding that invalidity is not a defense to breach of the licensing agreement because, during the life of the agreement, there was no challenge by Raritan to the validity of the patent.

Ordinarily, a licensee is not required to pay royalties when it successfully challenges a patent's validity unless the validity challenge was made after the contractual term expired, in which case the licensee is obligated to pay the full contract amount of royalties owed before the challenge was made.  See  Lear, Inc. v. Adkins,  395 U.S. 653, 673-74 (1969); Warner-Jenkinson Co. v. Allied Chem. Corp., 567 F.2d 184, 188 (2d Cir. 1977); American

Sterilizer Co. v. Sybron Corp., 614 F.2d 890 (3d Cir. 1980), USM Corp. v. Standard Pressed
Steel Co., 524 F.2d 1097 (7th Cir. 1975), PPG Industries, Inc. v. Westwood Chemical, Inc., 530
F.2d 700 (6th Cir. 1976).  "A licensee remains obligated to pay all royalties under a licensing
agreement which accrue until it takes an affirmative step that would prompt the early
adjudication of the validity of the patent, such as filing an action contesting the patent's validity
or notifying the licensor that the payments were being stopped because the patent was believed
to be invalid."  Bristol Locknut Co. v. SPS Technologies, Inc., 677 F.2d 1277, 1283 (9th Cir.
1982).  Under this reasoning, invalidity of the asserted patents will not absolve Raritan of any
liability it has for breach of contract because it did not initiate this validity challenge while
royalty payments remained.

   However, Raritan was barred from challenging validity during the term of the
contract because of the stand-still clause of the Settlement Agreement.  (Settlement Agreement ¶
5.1)  The Federal Circuit has held that such no-challenge provisions in settlement agreements are
valid and that an accused infringer who had an opportunity to conduct discovery and voluntarily
dismisses a validity challenge with prejudice under a settlement agreement with a clear and
unambiguous no-challenge clause is contractually estopped from raising such a challenge for the
duration of the clause.  Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1368-70 (Fed. Cir. 2001).
Here, the Settlement Agreement was reached in the prior action after the conclusion of a full and
fair period of pretrial discovery and the case was trial ready.  See Rates Technology, Inc. v.
Speakeasy, Inc., 2012 WL 2765081, *5-6 (2d Cir. July 10, 2012).

   Here, Raritan agreed to waive its right to challenge the validity of the patents
during the term of the license in consideration of the settlement of the lawsuit between it and
Avocent.  When it did so, it was well-settled law that only validity challenges made during the

term of a license would absolve an accused infringer of its obligation to pay royalties under a

license.  Tolling Raritan's invalidity defense to breach of contract would effectively resurrect

rights that had been deliberately bargained away in order to settle the previous action between

the parties.  In <u>Flex-Foot</u>, the Federal Circuit endorsed the policy that "while the federal patent

laws favor full and free competition in the use of ideas in the public domain over the technical

requirements of contract doctrine, settlement of litigation is more strongly favored by the law."

238 F.3d at 1369.  Acceptance of Raritan's argument undermines "the strong public interest in

enforcing settlements" and would decrease the effectiveness of settlements as a means for

resolving legal disagreements in patent cases.   <u>Flex-Foot</u>, 238 F.3d at 1370.  Although the Court

is inclined to grant summary judgment dismissing Raritan's invalidity defense to breach of

contract, it will still be necessary to submit the patent invalidity issue to the jury because it is

also raised as a defense to infringement.  Accordingly, the Court will submit the invalidity as a

defense to breach of contract issue to the jury but reserves the right to rule on the issue in the

context of a motion under Rule 50, Fed. R. Civ. P.

### e.  Patent Misuse

Avocent also seeks summary judgment on Raritan's patent misuse defense.  If a

party seeks to enforce an invalid or unenforceable patent or attempts to use its market position to

secure license payments on products that are not within the scope of its patents, patent misuse

will be a defense to breach of contract.  <u>See</u> <u>Va. Panel Corp. v. MAC Panel Co.</u>, 133 F.3d 860,

869 (Fed. Cir. 1997).  To constitute patent misuse, "there must be bad faith and improper

purpose in bringing the suit."  <u>Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.</u>,

45 F.3d 1550, 1558 (Fed. Cir.) (citation omitted).

Raritan presents two theories of patent misuse: first, that Avocent is using its market position to try to enforce an invalid or unenforceable patent and, second, that Avocent is using its market position to expand the scope of its patents to cover Raritan's products.  With respect to the first claim, none of the patents asserted by Avocent in this action have been previously declared invalid or unenforceable and there is no evidence in the record of Avocent's market power.  As such, summary judgment is granted in favor of Avocent on Raritan's first patent misuse theory.   Because the second ground relies on the infringement analysis, which has yet to be completed, it is not possible to determine whether Raritan's products are outside the scope of Avocent's patents.  However, Raritan has provided no evidence of bad faith or market power, and summary judgment dismissing its second patent misuse theory is granted on that basis.

### f.   Substantial Non-Infringing Uses

Raritan asserts as an affirmative defense that its products have substantial non-infringing uses and that, under the terms of the contract, Raritan is not required to pay royalties for products with such uses.  The contract language supports no such argument.  True, Raritan is not required to pay royalties on <u>components</u> of the products that have substantial non-infringing uses.  (Settlement Agreement  ¶ 1.8)  But the Settlement Agreement does not state that a product that practices the Licensed Technology but also has other non-infringing uses is exempt from the requirement to pay royalties.  Summary judgment is granted in favor of Avocent on Raritan's defense of substantial non-infringing uses.

### g.   Unenforceable Penalty

Raritan asserts that the interest and late fees required by the contract are unenforceable penalties.  The Settlement Agreement states that "[a] late penalty in the amount of

five percent (5%) shall be due on any late royalty payment if the payment is not made prior to the expiration of the cure period . . . ."  "[A]ny . . . amounts not paid when due shall accrue interest at the rate of one and a half percent (1.5%) per month or the highest rate permitted by applicable usury law, whichever is less, from the date due until the date paid."  (Settlement Agreement ¶ 3.3)

Under the law of Washington, a provision that is knowingly entered in to by equal and sophisticated parties for the purpose of providing just compensation for an anticipated loss will be enforced.  Wallace Real Estate Inv., Inc. v. Groves, 881 P.2d 1010, 1014 (Wash. 1994). The Court will enforce a liquidated damages clause if it was reasonable at the time it was agreed to.  Id.  Additionally, the fact that the contract uses the term "penalty" is not dispositive. Buchanan v. Kettner, 984 P.2d 1047, 1049 (Wash. Ct. App. 1999) (holding that a "late fee" provision was an enforceable liquidated damages clause).  Because neither party has provided information on the reasonableness of a 5% rate for the purpose of compensating Avocent for anticipated losses in the event of a delay, summary judgment on this affirmative defense is denied.

### h.  Failure to Mitigate

Raritan's failure to mitigate defense, which would reduce rather than bar recovery, is based on the claim that Avocent's delay in asserting its rights resulted in $1,237,400 in interest and penalties that could have been avoided if Avocent had discussed the possible infringement earlier.  Under Washington State law, "[t]he doctrine of avoidable consequences, or mitigation of damages, prevents an injured party from recovering damages that the party could have avoided through reasonable efforts."  Jaeger v. Cleaver Constr., Inc., 201 P.3d 1028, 1037 (Wash. Ct. App. 2009) (citations omitted).  The parties dispute the material facts relating to the

course of conduct said to give rise to the duty to mitigate, i.e. Avocent's delay in stating its position on infringement.  Moreover, there is a sharp dispute as to the amount of damages that could have been avoided if Avocent had raised its infringement concerns in a timely and forthright manner.  These issues foreclose summary judgment on this defense.

> ### i.   Condition Precedent and Duty of Good Faith

Raritan also asserts that Avocent failed to perform a condition precedent when it did not attempt to resolve the royalty underpayment in good faith as required by the Settlement Agreement.  Raritan asserts as a separate defense that Avocent violated its duty of good faith and fair dealing for the same reason.  "A condition precedent is an event occurring subsequent to the making of a valid contract which must exist or occur before there is a right to immediate performance."  Walter Implement, Inc. v. Focht, 730 P.2d 1340, 1342 (Wash. 1987).  Although there is an implied duty of good faith in every contract, "it will not contradict terms or conditions for which a party has bargained."  Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 935 P.2d 628, 632 (Wash. Ct. App. 1997) (citation omitted).

The Settlement Agreement specifically describes the agreed-upon process for resolving disputes over accounting for royalties.  (See Settlement Agreement ¶ 3.4)  If an audit disclosed an underpayment, Raritan could dispute the finding with a written explanation of its disagreement after which the parties "should endeavor in good faith to resolve the disagreement" before seeking legal relief.  Id.  There is a material question of fact as to whether either party endeavored in good faith to resolve the disagreement before Avocent pursued legal action.  Avocent does not appear to have clarified its opinion that the KX II and KSX II infringed their patents, but it did notify Raritan of the results of the audit and give Raritan an opportunity to cure the purported underpayment.  Similarly, Raritan informed Avocent that it was not paying

royalties for those products stating that the products were not infringing but did not clarify its reasons for this conclusion in writing.  The steps preceded the obligation to attempt to resolve the dispute in good faith.  For these reasons, summary judgment on these affirmative defenses is denied.

### VIII.   Sealing

The parties have filed ten unopposed motions to permit certain exhibits submitted on their summary judgment motions to remain redacted or under seal.  Some of these exhibits are deposition testimony, including expert testimony, purportedly related to technical aspects of the products, sales information and legal matters.  Other exhibits are business, technical or legal documents that allegedly contain confidential proprietary information.  This includes documents exchanged between the parties and opinions from legal counsel.  Separate exhibits may reference the same document.

There are both common-law and First Amendment presumptions of public access to judicial documents. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–20 (2d Cir.2006).  "[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." Id. at 123.  As a matter of law, documents submitted at summary judgment are judicial documents. Id. at 121, 123. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. at 119.

Certain submissions directly affect adjudication, while others are irrelevant. Id. at 119–20. Courts may weigh the presumption of disclosure against "countervailing factors," including "the privacy interests of those resisting disclosure." Id. at 120 (quotation marks

omitted).  "When litigation requires disclosure of trade secrets, the court may disclose certain materials only to the attorneys involved." In re New York Times Co., 577 F.3d 401, 410 n. 4 (2d Cir.2009) (in dictum).

Raritan asserts that there are no first amendment or public interest issues at stake in this case because this is a civil dispute between two competitors that involves proprietary information.  The parties have a significant interest in maintaining the privacy of their proprietary information and that information would traditionally be considered private rather than public.  Additionally, Raritan claims that there is no less restrictive alternative and that public disclosure poses a genuine risk of injury to the parties' competitive positions and economic interests.

The Court concludes that the weight given to the presumption of access is less in this case because the limited quantity of confidential information does not go to the heart of the judicial process.  The information is at the margins of this Court's rulings and has not required the Court to redact any portion of its Memorandum and Order.  The presumption of access is overcome as to the narrowly-tailored confidential information at issue, which is briefly described below.  The exhibits identified below will be filed under seal, with the exception of exhibits for which no redactions were provided or for which the parties have withdrawn their requests to seal. The grant of the parties' sealing requests is without prejudice to the application of a non-party seeking to modify this order.

### a.  Privileged Communications

The parties may file the following documents under seal because they are confidential legal communications that contain information that is protected by the attorney-client privilege or work-product privilege:

- Exhibit 4 to Avocent's Breach of Contract Motion;
- Exhibits D, E and J to Avocent's Inequitable Conduct Motion;
- Exhibits 42, 44-47, 55, 58, and 60-61 to Raritan's Opposition to Avocent's Inequitable Conduct Motion;
- Raritan's Opposition Memorandum to and Response to Avocent's Statement of Material Facts on Avocent's Inequitable Conduct Motion; and
- Exhibit 9 to Avocent's Opposition to Raritan's Omnibus Motion.

### b. Trade Secrets

The parties may file the following documents under seal because they include

engineering and business trade secrets which could be used adversely by competitors:

- Exhibit 4 to Avocent's Breach of Contract Motion;
- Exhibits D, E and J to Avocent's Inequitable Conduct Motion;
- Exhibits 8 and 9 to Raritan's Opposition to Avocent's Infringement Motion;
- Exhibits 46-47, 54, 57 and 60-61 to Raritan's Opposition to Avocent's Inequitable Conduct Motion;
- Raritan's Opposition Memorandum to and Response to Avocent's Statement of Material Facts on Avocent's Inequitable Conduct Motion; and
- Exhibits 9 and 10 to Avocent's Reply on its Inequitable Conduct Motion.

### c. Employment Information

The parties may file the following documents under seal because they include

confidential employment information, the disclosure of which could affect future contract

negotiations:

- Exhibit 4 to Avocent's Breach of Contract Motion;
- Exhibit D to Avocent's Inequitable Conduct Motion; and
- Exhibit 60 to Raritan's Opposition to Avocent's Inequitable Conduct Motion.

### d. Engineering Schematics, Source Code and Future Products

The parties may file the following documents under seal because they include

engineering schematics, confidential source code and confidential deliberations about future

products, the disclosure of which could unfairly allow competitors to develop competing

products:

- Exhibits 6, 7 and 10 to Avocent's Infringement Motion;
- Exhibits 6 and 12 to Raritan's Opposition to Avocent's Infringement Motion;
- Exhibit 16 to Avocent's Reply on its Infringement Motion;
- Exhibits 3 to Raritan's Sur-Reply to Avocent's Infringement Motion;
- Exhibits 3, 8 and 33 to Avocent's Opposition to Raritan's Omnibus Motion; and
- Exhibits 10 and 22 to Raritan's Reply on its Omnibus Motion.

### e.  Confidential Business Information

The parties may file the following documents under seal because they include

confidential business information—market forecasts, sales, inventory management, profit

margins, etc.—the disclosure of which would cause competitive harm:

- Exhibit 4 and 6 to Avocent's Breach of Contract Motion;
- Exhibit 7 to Raritan's Opposition to Avocent's Infringement Motion;
- Exhibit 5 and 6 to Raritan's Opposition to Avocent's Breach of Contract Motion; and
- Exhibits 6 and 27-28 to Raritan's Omnibus Motion.
-

### f.  Voluntary Withdrawal of Sealing Requests

Raritan initially requested, but has since withdrawn its requests, to seal the

following exhibits:

- Exhibits 12 and 13 to Avocent's Motion on Infringement;
- Exhibits 8 and 9 to Raritan's Opposition to Avocent's Breach of Contract Motion;
- Exhibit 49 to Raritan's Opposition to Avocent's Inequitable Conduct Motion;
- Exhibit 5 to Avocent's Reply on its Inequitable Conduct Motion;
- Exhibits 11, 25-26 and 30 to Raritan's Omnibus Motion;
- Exhibits 1, 7, 16-17, 22 and 32 to Avocent's Opposition to Raritan's Omnibus Motion;
- Exhibits 1, 11, 13 and 18 to Raritan's Reply on its Omnibus Motion

**g.  Sealing Requests Without Redacted Versions**

The parties have requested that the following exhibits be filed under seal but have not provided redacted versions of these exhibits or explained why they must be sealed:

- Exhibits I to Avocent's Motion on Inequitable Conduct;
- Exhibits 4-5, 10-11, 13-16, 18, 20-26 and A to Raritan's Opposition to Avocent's Motion on Infringement;
- Exhibits 1, 4 and 10-11 to Raritan's Opposition to Avocent's Breach of Contract Motion;
- Exhibits 6-19, 24-34, 37-38, 41, 50, 56 and 59 to Raritan's Opposition to Avocent's Inequitable Conduct Motion;
- Exhibit 12 to Avocent's Reply on its Inequitable Conduct Motion;
- Exhibits 10, 12, 14-16 and 18-24 to Raritan's Omnibus Motion;
- Exhibits 5, 10 and 29 to Avocent's Opposition to Raritan's Omnibus Motion; and
- Exhibits 2, 6, 12, 14, 17, 19 and 21 to Raritan's Reply on its Omnibus Motion.

CONCLUSION

For the reasons stated above, the plaintiff's motions for summary judgment (Docket # 41 & 49) are DENIED.  Plaintiff's motion for summary judgment (Docket #45) is DENIED, in part, and GRANTED, in part.  Defendant's motion for summary judgment (Docket # 58) is DENIED, in part, and GRANTED, in part.  Plaintiff's motions to seal (Docket # 44, 48, 53, 63, 91 and 95) are DENIED, in part, and GRANTED, in part.  Defendant's motions to seal (Docket # 55, 69, 105 and 109 ) are DENIED, in part, and GRANTED, in part.

A bench trial on inequitable conduct will be held on September 24, 2012.  Trial of all other issues will commence on January 7, 2013 at 10:00 a.m.  Final pretrial submissions consisting of requests to charge, voir dire requests, fully submitted in limine motions and a Joint Pretrial Order are due December 6, 2012.  The Final Pretrial Conference will be December 20, 2012 at 10.30 a.m.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
      July 31, 2012